112   168
a210s 518

## Warren Springer v. John Borden.

### Gen. No. 10,832.

1. APPRAISEMENT—*when party has not wrongfully sought to prevent.* Held, under the particular facts of this case, that the defendant did not prevent the appraisement provided for by the lease in question by any wrongful act or conduct on his part.

2. RENTS AND INCOME—*when, not competent to be shown to determine the value of the lot where a lease provides that the lot, exclusive of the buildings, is to be appraised.* Evidence of the rent or net income de-

rived from the buildings located thereon is not competent to show the value of the lot exclusive of the buildings.

3. LEASE—*when effect of a, should not be considered in determining the value of a lot.* The effect of a lease in determining the "cash value of the demised premises, exclusive of the buildings and improvements thereon," is properly not taken into consideration inasmuch as the lot only is to be appraised.

Proceeding in equity to obtain appraisal of demised premises. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed February 13, 1904.

**Statement by the Court.** This was a bill in equity brought by John Borden, who is the owner of the fee of lot 3 in block 117 in School Section Addition to Chicago, against Warren Springer, George H. Taylor and others for the purpose of having the court ascertain and fix the cash value of the lot on the first day of January, 1902, exclusive of the buildings and improvements thereon, for the purpose specified in a lease of said lot from Borden to Taylor, from September 1, 1881, to January 1, 1922. The rent up to January 1, 1892, was fixed by the lease. And the lease provided that "during the residue of the term the lessee should pay a sum equal to five per cent. of the cash value of the demised premises, exclusive of the buildings and improvements." The lessee also agreed, by the terms of the lease, to pay the taxes, charges and assessments that should be levied upon the property during said term, and to keep the buildings and improvements in good repair, and in the event that the buildings should be destroyed by fire replace the same, so that during said term they shall be as good as the average of the buildings situated in the same neighbor-hood. The lease also provided that, during the term, the lessee should not permit the demised premises, or any part thereof, to become entirely vacant and unoccupied. It was provided in the lease that in order to determine the rent after the first period of ten years, and beginning on the first day of January, 1892, the cash value of the demised premises on the first day of January, 1892, shall be taken and considered as the cash value for the ten years next en-

suing, and, in like manner, the cash value of the demised premises on the first day of the month of January which shall be in every tenth year thereafter during the continuance of said term shall be taken and considered as the cash value for the ten years next ensuing, and these cash values as thus determined shall be the basis whereby the rent for such period shall be determined.

The lease provides also, that in order to ascertain the cash value of said premises for any period the person or persons then interested on either part, may, not exceeding ninety days prior to each of said dates, select a competent and disinterested person, who shall be at the time a resident of said city of Chicago and the owner of a free-hold in the South Division thereof, and notify the person or persons then interested on the other part of such selection, whereupon he or they shall, within fifteen days thereafter, select another person of like character and qualifications, and notify the person or persons making such selection of such second choice, whereupon the two persons thus chosen shall select a third person of like character and qualifications as above, or, if the two cannot agree upon such third person, each of them shall name one person, of which two the one to serve shall be determined by lot in any manner mutually agreed upon by the two persons already chosen, and the three so selected shall fix a time and place of meeting and notify the persons interested, at which, as well as at all adjourned meetings, the persons interested shall be entitled to be heard with their proofs, after which said appraisers or a majority of them shall render their award in writing, subscribed by them or a majority of them, fixing the then cash value of said demised premises, exclusive of the buildings and improvements thereon.

The lease also provides that " if the person or persons on either part thereto, being legally competent to do so, shall fail or neglect to appoint an appraiser and give notice thereof, within the time above limited, after such other party first moving in the premises shall have selected an appraiser and given notice thereof, such party who shall

Springer v. Borden.

have made such first selection shall be and is hereby irrevocably authorized on behalf of the parties so failing or neglecting to select one, of the character and qualifications as above, which two shall proceed to select a third in manner as above, which three so chosen shall proceed as above provided to make award."

It is further agreed between the parties that "if for any cause whatever a valid and just award shall fail to be made at any of said times, or shall not be made or completed at the time or date, for which, if duly made, it would fix or ascertain the said cash value of said demised premises, then unless all of the parties interested can otherwise at once agree upon such value, any person or persons at the time interested upon either part or side hereto shall have the right and be entitled to apply to any court of record in said county of Cook to have said value ascertained," whose judgment or decree shall be binding on the persons concerned.

It is also provided that "if this lease and the term thereby granted shall continue and be fully observed on the part of said lessee until the 1st day of January, 1922, the then cash value of said demised premises exclusive of buildings and improvements then thereon, and also of the said demised premises including said buildings and improvements (all mere tenant's fixtures and things not needed or required in and about said property for its use for general purposes to be excluded) shall be ascertained in like manner as above, on receipt of which award said lessor, his heirs or assigns, shall have the option for thirty days thereafter to take the said buildings and improvements at their values, as shown by the said award, or extend this lease and the term thereby granted for a further period of ten years; if taken, to be paid for one-third cash, the balance in six and twelve months, at five per cent interest, the same to be a first lien upon the premises until paid, with the option to pay all cash. If the first payment is not made or tendered on the premises within said thirty days, then the lease and the term thereby granted shall stand and be extended for

a further period of ten years, just the same in all respects as if the original term had been for fifty instead of forty years, and at the end of which time and the term thereby granted * * * a like award shall be made and the buildings and improvements then on said premises shall and will be then taken and paid for at seventy-five per cent of their value, as ascertained by the said last named award by said lessor, his heirs or assigns, on like terms of payment as before specified."

The bill alleged and the proofs showed that there were, of record and unreleased, several trust deeds of the leasehold interest in said premises created by said lease, and that there were several judgments against appellant Springer, the assignee of said lease, which were liens upon his interest in said premises. The trustees in said trust deeds, the several judgment creditors, Springer, the assignee of said lease and owner of the leasehold subject to the liens thereon, and all other persons concerned, were made defendants to the bill. The chancellor heard the testimony of a large number of witnesses and entered a decree fixing the cash value of said demised premises, exclusive of the buildings and improvements thereon, on January 1, 1902, at $450,000, and from this decree the defendant Springer appealed.

W. N. GEMMILL, for appellant; WILLIAM J. AMMEN, of counsel.

PENCE & CARPENTER, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The first contention of counsel for appellant is that Borden, the lessor, wrongfully prevented an appraisement of the lot as provided in the lease, and that, therefore, his bill should have been dismissed.

Appellant, alone, appointed John C. McCord to represent him in the appraisement. Appellee protested against this appointment upon the ground that appellant had not the right alone to make such appointment and insisted that Taylor, the lessee, the trustees, and others interested in the

trust deeds of said premises, and all other persons interested in said leasehold should join in appointing an appraiser. Appellant insisted upon his right alone to appoint an appraiser, and appellee, still insisting upon his protest, within the fifteen days given him by the lease to appoint an appraiser, appointed George Birkoff, Jr. Birkoff suggested to McCord as the third appraiser Wyllys W. Baird, and McCord indicated a willingness to accept Mr. Baird. It turned out that Baird was not the owner of a free-hold in the South Division of Chicago, and, hence, was not one who could be appointed appraiser under the lease. There was no further effort on the part either of McCord or Birkoff to secure a third appraiser. In our opinion, the evidence does not show that appellant prevented the appraisement of the lot in the manner provided in the lease by any wrongful act or conduct on his part.

It is next contended that the court erred in excluding evidence of the rents and net income of the buildings on the lot on and before January, 1902. The lease provides that the lot exclusive of the buildings is to be appraised, and we fail to see how evidence of the rent or net income derived from the buildings on the lot could show or tend to show the value of the lot exclusive of the buildings. Moreover, all the witnesses, those called by the lessee as well as those called by the lessor, testified that the buildings on the lot were not suitable or proper for the lot and location, but were an unsuitable and inadequate improvement of the lot. The evidence excluded could not have aided the court to arrive at a true conclusion as to the value of the lot alone, and was, therefore, properly excluded.

The principal contention of appellant is that the court erred in not taking into consideration the effect of the lease in determining the "cash value of the demised premises exclusive of the buildings and improvements thereon." The witnesses called by the lessor testified that in estimating such value they valued the lot as a piece of vacant ground and did not take into consideration the effect of the lease on the value of the lot. The witnesses called by the lessee tes-

tified that the value of the lot, exclusive of the buildings, was by reason of the lease from fifteen to thirty-five per cent. less than it would be if the lot were vacant and the lease not in existence.

The decree declares that the court in fixing the value of the demised premises did not take into consideration the effect of the lease on the value of said premises.

By the lease, Borden demised to Taylor "lot 3 of block 117" and Taylor promised to pay from January 1, 1892, to January 1, 1922, as yearly rent, five per cent. of the "cash value of said demised premises exclusive of the buildings and improvements which may be placed thereon." The words "demised premises" in the clause above quoted, refer to and mean "lot 3 of block 117," and the construction and meaning of the clause would not be altered or affected by striking out the words "demised premises" and inserting in their stead the words "lot 3 of block 117." The value of said lot exclusive of buildings and improvements on January 1, 1892, 1902, 1912, and in a certain contingency, January 1, 1922, was, by the provisions of the lease to be determined, not for the purpose of a sale of the lot, but for the purpose of fixing the yearly rent to be paid for said lot during the next ten years.

If the value of the lot was to be ascertained for the purpose of sale, or of ascertaining for any purpose the value of the interest of the lessor therein, then the fact that it was leased for a long term, and the purchaser could not obtain possession until the end of the term, as well the provisions of the lease in relation to the purchase by the lessor or his grantee of the buildings at the end of the term, would properly be taken into consideration. But in the case before us the whole purpose of the indenture was the lease of the lot and thereby to secure to the lessee the right of possession of the lot, and to the lessor the payment of ground rent.

It was the *lot* which was leased and it was the *lot* which was to be appraised. The existence of the lease or its terms and conditions may affect favorably or unfavorably

the value of the rights and interest of the lessor in the lot, but they can not affect the value of the lot itself.

In determining the value of the lot for the purposes stated in the lease, it is clear that the cash value of the lot contemplated by the covenants of the lease was the cash value of a fee simple estate in said lot; the cash value of every interest in and right to said lot, considered for the purpose of such valuation as vacant property. But three cases involving directly the same question we are now considering have been brought to our attention, and the decision in each of the cases supports the conclusions to which we have arrived. The cases referred to are Philadelphia Library Co. v. Beaumont, 39 Penn. S. 43; Lowe v. Brown, 220 Ohio S. 463; Goddard v. King, 40 Minn. 164. In Lowe v. Brown the Supreme Court of Ohio said: "Ground was leased, and the annual rent for twenty years was agreed upon. But contemplating future changes in the value of the ground, the per cent. on such value was agreed upon; but the 'true value' of the 'ground' was left to be determined at the expiration of each successive term of twenty years. It could not be foreseen what might in the future affect the value of the ground; nevertheless, whatever might occur, it was stipulated that the 'true value' of the 'ground,' whatever, in fact, it might be at the expiration of each period of twenty years, should be the basis of the annual rent in future years. To arrive at this basis, appraisers were 'to view the ground' and 'appraise the same at its true value.' It is clear from this language that the true value contemplated by the covenants of the lease as the basis of the amount of rent, was the fee simple value of the ground alone, without reference to the purpose for which it was leased, or the character of the improvements thereon. Phila. Lib. Co. v. Beaumont, 39 Penn. 43. The whole purpose of the indenture was the lease of ground on the one part, and to secure the payment of ground rent on the other. The ground leased was, in fact, alone the basis of the rent; and its true value was to determine the amount to be paid at a fixed per cent. thereon. It was ground that

was leased, and ground only was to be appraised. No matter what might be the improvements on the ground, or the rental value of the premises, still the appraisement was to be confined to the true value of the ground. This is what was done, and we regard it to be in accordance with the true construction of the lease."

In Goddard v. King the Supreme Court of Minnesota said: "The fact that under the lease the defendant might use the land for a particular purpose, or that he was restricted by it to a particular use, and the fact that plaintiffs had given the defendant a long lease of the land, had nothing whatever to do with its value as between them under the lease, for the valuation was not to be made for the purpose of a sale of the land, thus encumbered, by one to the other. The referees ought to have estimated the market value of the land as it would have been with the lease and improvements made by the lessee off."

Appellant further contends that the value of the lot as fixed by the court, $450,000 or $5,000 per front foot, was too high. Three of appellee's witnesses testified that the value of the lot was $5,500 per foot, one that it was $6,000 per foot. Eight witnesses testified for appellant that the value of the lot, without considering the lease, was $4,000 per foot, one that it was $3,500, and one that it was $4,100. We have carefully considered the testimony of these witnesses, their experience and qualifications as stated by them, the reasons given by each for the opinion he expressed, and the other evidence touching the value of said lot, and we cannot say that upon the evidence, the court erred in its conclusions as to the value of the lot.

If any evidence was admitted which was improper, we must presume that it was not considered by the court in arriving at its final decision.

The decree of the Superior Court will be affirmed.

*Affirmed.*