## H. O. STONE *et al.*

### *v.*

## CAROLINE J. MULVAINE, Exrx.

*Opinion filed October 24, 1905.*

1. CONTRACTS—*parol evidence is admissible to clarify uncertain contract.* Parol evidence which .does not change a written contract, but makes clear its uncertain, ambiguous or incomplete provisions, is admissible.

2. EVIDENCE—*what not admissible in action to recover money paid for indemnity.* In an action to recover the amount of a check delivered by the plaintiff to the defendant to indemnify the latter against loss in a certain transaction, proof that the plaintiff had been unable to reimburse himself in another transaction to which the defendant was not a party and with which his contract with the defendant was in no way connected, is not admissible.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This was an action of assumpsit commenced by H. O. Stone & Co. against Phineas I. Mulvaine, in the circuit court of Cook county, to recover the amount of a check for $1400.13, bearing date November 8, 1895. The declaration consisted of the common counts, and the general issue and notice of set-off were filed. Mulvaine died subsequent to the commencement of the suit and his executrix was substituted in his stead as defendant. A jury was waived and a trial was had before the court, which resulted in a finding and judgment in favor of the defendant, from which judgment the plaintiffs prosecuted an appeal to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, and a further appeal has been prosecuted to this court.

Numerous propositions were submitted by the plaintiffs, which the court was asked to hold as the law governing

the case, some of which were marked "held" and others "refused."

In the year 1893 the plaintiffs, who were loan brokers, received an application for a loan of $20,000 from Mrs. Sobra upon property located on Michigan avenue, in the city of Chicago. They submitted the loan to Mulvaine, who accepted the same. Before the loan was made the premises were injured by fire, and he declined to make the loan unless he was protected in some way from mechanics' liens incurred for repairs upon the premises. Thereupon the plaintiffs signed and delivered to him the following letter:

                                              "*May 15, 1893.*
"*Dr. Phineas I. Mulvaine, 4022 Grand Boul., City:*

"DEAR SIR—In relation to the liability of mechanics' liens upon the premises 2021 Michigan avenue in consequence of repairs now going on, we give you this letter to say that we will indemnify you against any losses arising out of such liens, if any are filed on account of the construction now going forward.

        "Yours truly,                    H. O. STONE & Co."

Mrs. Sobra did not pay for the repairs or pay the loan. A bill was filed in the circuit court to enforce a mechanic's lien for the said repairs by Samuel Smith, and Mrs. Sobra, W. Koeppe (another lienholder) and Mulvaine were made defendants. Koeppe and Mulvaine filed cross-bills, and Smith's claim for $295.74, Koeppe's for $946.21 and Mulvaine's for $23,604.56 were established, and the premises were ordered sold by the master to satisfy said indebtedness. The master advertised a sale for November 8, 1895. The morning of the sale Mulvaine and Mr. Conover, his attorney, called at the office of H. O. Stone & Co., where they met Mr. McKinney, the manager of H. O. Stone & Co.'s loan department. Conover testified that he said to McKinney, in substance, that the amount of the mechanics' liens upon the Sobra property had been established; that there was to be a master's sale of the property, and that Mulvaine thought the time had come when the matter should be settled; that if H. O. Stone & Co. would pay immediately the

amount of the mechanics' liens, which, with costs, aggregated the sum of $1400.13, Mulvaine would bid the property in for the full amount of the decree, and if the property was redeemed he would re-pay the amount of the liens, etc., with interest, to H. O. Stone & Co., and that if they did not advance that amount he would bid the property in for the amount of his mortgage and hold them for the amount of said liens, in which case, if the property was redeemed, they would not get their money back. McKinney, after conferring with his principals, said the property was valuable; that he thought it would be redeemed, and that H. O. Stone & Co. would do as suggested. McKinney went to the bank to obtain a certified check for the amount of the mechanics' liens, and Conover returned to his office and dictated the following paper:

"CHICAGO, *Nov. 8, 1895.*

"Received this day by the undersigned, Phineas I. Mulvaine, from H. O. Stone & Co., the sum of fourteen hundred and 13/100 dollars, ($1400.13,) the amount required to pay the mechanics' lien claims of Samuel Smith and William Koeppe, together with the costs incurred in the foreclosing thereof, in accordance with a certain decree entered October 5, 1895, by the circuit court of Cook county in the case of *Samuel Smith* v. *Marie L. Sobra et al.,* Gen. No. 124,243.

"In consideration whereof the undersigned hereby agrees that in case the premises involved in said suit shall be redeemed from the sale of the master in chancery made under said decree, in accordance with the law, then the undersigned will re-pay to H. O. Stone & Co. said sum of money, together with interest thereon at the same rate to which he will be entitled under the certificate of sale in said suit."

—which was signed by Mulvaine. McKinney, Mulvaine and Conover met at the real estate board, where the master's sale was to take place. McKinney had a certified check for the amount of the mechanics' liens with him, payable to the order of the master, which he delivered to Conover, and Conover delivered to him said paper. Mulvaine bid the property in for the amount of the decree and delivered to the master the H. O. Stone & Co. check and his check for

the balance of the bid, after deducting the amount of the decree in his favor. The master, upon his return to his office, discovered that the sale had only been advertised three weeks, when the decree provided it should be advertised four weeks. He notified the parties of that fact and that the sale was invalid, and he advertised the property for re-sale December 8, 1895, and returned to Mulvaine the amount of his check and the H. O. Stone & Co. check, which check had gone to his credit in his bank. McKinney, on learning the sale had fallen through, sent Mulvaine the following letters:

"*11/13/95.*

"*Dr. P. I. Mulvaine, 4022 Grand Boul., City:*

"Dear Sir—We understand the foreclosure in the *Madame Sobra case* has to be re-advertised. We wish to have you return to us the amount which we paid to the master. We are informed by Mr. Dicker that the amount was turned over to you.

"Yours truly,

H. O. Stone & Co.

Dictated by F. W. McKinney."

"*11/15/95.*

"*Dr. P. I. Mulvaine, 4022 Grand Boul., City:*

"Dear Sir—Please call and see the writer and he will explain why we wish to have the funds which you received from the master in chancery returned to us and paid back to cancel the liens in another way. Please call and see the writer to-morrow morning, if possible, and arrange the matter.

"Yours truly,    H. O. Stone & Co.

Dictated by F. W. McKinney."

Mulvaine did not reply, in writing, to either of said letters, but after the receipt of the second letter called in person at the office of H. O. Stone & Co. McKinney testified when Mulvaine called he had with him the following conversation: "I told Dr. Mulvaine we had been advised that the check should be drawn to the order of the master when the amount was determined, and which amount had been determined, and that I understood that it had not been so applied, and that we wished the money returned to us so that we could pay it in cancellation of the mechanics' lien claims enumerated in the bill. I stated to him that the check had

been paid to the master for that purpose. That was brought out when I explained to him what I had written him in the second letter,—that it was not for the need of the money. I had to make some apologies about asking him to return the money,—that I did not distrust him, but wanted to give my personal attention to the application of the money. He said then he had received the money from Mr. Dicker. He said that it was not necessary, owing to the short length of time it would be required, and that he would protect our interests and see that it was properly applied,—see that this fund was properly applied to protect our interests. That was about the ending of any conversation I had with the doctor about the money involved."

Mulvaine attended the second sale and bid the property in for the amount of the decree, $25,632.62. No redemption was had from that sale, and the master, after the expiration of fifteen months, made a deed to Mulvaine. At the time H. O. Stone & Co. gave to Mulvaine the letter agreeing to indemnify him from loss by reason of mechanics' liens, Mrs. Sobra assigned one of the insurance policies upon said property to H. O. Stone & Co. to secure them against loss. by reason of their having signed the letter agreeing to protect Mulvaine from mechanics' liens, and when the policy was paid the money was placed in escrow in the First National Bank of Chicago. After the sale H. O. Stone & Co. requested the bank to pay to them the amount of said check and interest, and upon the objection of Mrs. Sobra they declined so to do and filed a bill of interpleader. The trial court in that proceeding held said mechanics' liens were satisfied by a sale of the property, and H. O. Stone & Co. were defeated, and the decree was affirmed by the Appellate Court.

KREMER & GREENFIELD, for appellants.

JOHN SCHWENDER, (LAWRENCE P. CONOVER, of counsel,) for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended the circuit court erred in admitting parol proof of the arrangement between H. O. Stone & Co. and Mulvaine, whereby it was agreed that Mulvaine should bid at the master's sale the full amount of the decree, as it is said the effect thereof was to change the written contract signed by Mulvaine on November 8, 1895. We do not agree with such contention for two reasons: First, while the contract is incomplete, we think it shows upon its face, and without the aid of parol evidence, that Mulvaine was not to re-pay said sum of $1400.13 to H. O. Stone & Co. unless the premises were redeemed from a sale for the full amount of the decree. For Mulvaine to have agreed to pay back the amount of said check, on redemption, unless he bid the full amount of the decree would have been for him to have agreed to waive the guaranty of H. O. Stone & Co. which he held to protect him against said mechanics' liens. This he clearly did not intend to do, and as such premises were not redeemed, Mulvaine was not, by the express terms of the agreement, bound to re-pay to H. O. Stone & Co. said sum of money. And secondly, the effect of said evidence was not to change said contract, but to make clear the provisions thereof, which is always permissible where a contract is uncertain, ambiguous or incomplete. *Ruff* v. *Jarrett,* 94 Ill. 475; *Bradshaw* v. *Combs,* 102 id. 428; *Razor* v. *Razor,* 142 id. 375; *Vail* v. *Northwestern Mutual Life Ins. Co.* 192 id. 567; *Davis* v. *Fidelity Fire Ins. Co.* 208 id. 375.

It is said, however, that conceding the contract expressly provides that Mulvaine agreed to re-pay to said H. O. Stone & Co. the amount of said check only in case of a redemption from a sale for the full amount of the decree, that part of the contract was changed at the time McKinney had the interview with Mulvaine after the first sale and when he was requested to return the amount of said check to H. O. Stone & Co. We do not so understand that conversation. Mulvaine insisted on retaining the money, and said he would

protect the interest of H. O. Stone & Co. and see that the money was properly applied. We think he meant thereby that he would apply the money according to the arrangement made with McKinney at the office of H. O. Stone & Co. on the 8th of November, 1895, when he and Conover had the first interview with McKinney; that is, he would apply it by bidding in the proprety at the full amount of the decree. We are unable to understand why Mulvaine should agree to use this money in payment of said mechanics' liens prior to the sale of the property, and also agree to re-pay the amount of said liens to H. O. Stone & Co. in case the property should be redeemed, the effect of which would be that Mulvaine would pay said sum twice. At the time the contract was made and the check delivered McKinney anticipated the property would be redeemed, and that H. O. Stone & Co., when it was redeemed, would get back their money, and perhaps lost sight of the fact that a sale of the property for the full amount of the decree would satisfy the mechanics' liens. Mulvaine declined to give up the money after the first sale fell through, but insisted on applying the fund as it had been agreed it should be applied at the time the check was delivered, and he so applied it at the time of the second sale.

It is said the court erred in refusing to permit H. O. Stone & Co. to prove that they were unable to reimburse themselves for the money advanced to Mulvaine in satisfaction of said mechanics' liens out of the insurance money which was held in escrow by the bank. We think there was no error in the action of the court in declining to admit such proof. Mulvaine was in no way a party to that transaction and was not responsible for the loss of the security of H. O. Stone & Co. Mulvaine purchased the property for the full amount of said decree, in accordance with his arrangement with McKinney. Had the property been redeemed, then he would have been bound to return to H. O. Stone & Co. the amount of said check, with interest, and that was the extent

of his undertaking. The property was not redeemed, and he was in no way responsible to H. O. Stone & Co. by reason of the fact that the effect of the contract made by them with him, when carried out by the purchase of said premises for the full amount of the decree, was to release the claim of H. O. Stone & Co. upon the fund held by the bank.

Finding no reversible error in this record the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*