## Chicago Auditorium Association, Appellant, v. The Corporation of the Fine Arts Building, Appellee.

### Gen. No. 14,606.

1. CONTRACTS—*what competent to aid construction.* Options, notwithstanding the making of a final contract, may be considered by the court for the purpose of affording a light by which the court may interpret the final contract, and in that way place itself in the attitude in which the parties stood to each other at the time of entering into the final contract.

2. CONTRACTS—*how enforced in chancery.* A court of conscience must enforce a contract made and entered into by the parties in good faith with full knowledge of its binding force, which the law imputes from the fact of entering into it, and will not relieve either party from the performance of any of its covenants because it may appear, forsooth, that the bargain made has turned out, in the lapse of time, to be hard or improvident.

3. CONTRACTS—*when irregularity in appraisal made pursuant to lease, cannot be availed of.* An irregularity not complained of prior to the report of the appraiser cannot thereafter be availed of in a court of chancery.

4. CONTRACTS—*when appraisal made pursuant to lease will be sustained.* An appraisal made pursuant to the terms of a lease

will, where both parties have been heard, be sustained if no fraud or unfair dealing is shown.

5. CONTRACTS—*what will not affect appraisal made pursuant to lease.* The fact that the party satisfied with the appraisal paid the entire fees of the appraiser appointed by himself and half of the fees of the umpire, will not affect the validity of the appraisal made even though the instrument providing therefor specified that each party should pay one-half of the entire expense of the appraisal.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed October 7, 1909.

**Statement by the Court.** Appellant filed its bill in the Circuit Court against appellee, seeking a decree setting aside and holding as nugatory two certain appraisements of the value of two lots demised and leased to appellant by the Studebaker Brothers Manufacturing Company, the immediate grantors of appellee, who acquired the fee title subsquent to the making of said leases and hold title subject thereto. The appraisement of value was for the purpose of fixing the yearly rental charge under the terms of the leases for the ten years ensuing from August 1, 1906. Upon hearing the chancellor dismissed the bill for want of equity and gave judgment for costs against appellant, from which decree and judgment appellant prosecutes this appeal.

The contract of the parties is contained in three separate documents of even date and executed and delivered together, two of the documents being ground leases, one granting lot 18 and the other lot 19 for a term of 99 years, commencing August 1, 1887, the two lots so leased having a frontage of 52 67/100 feet on Michigan avenue, running with a uniform depth westward of 171 68-100 feet, and upon which is now situate the northern part of the Auditorium building. These instruments were preceded by two options to the moving spirit in the Auditorium enterprise—Ferdinand W. Peck—from the Studebaker Company, in which the substantial terms of the leasing were outlined, the

264    APPELLATE COURTS OF ILLINOIS.

Chicago Auditorium Ass'n v. Fine Arts Building, 150 Ill. App. 262.

leasing to be made to a corporation which Peck contemplated bringing into being. Until August 1, 1906, the leases provided that the annual rental for each lot should be eighteen hundred dollars plus taxes, etc.; that thereafter the rental should be fixed for ten yearly periods on the basis of six per cent on the fair cash value of the leased premises, exclusive of improvements thereon. Such fair cash value, it is provided, shall be ascertained by three appraisers, each of whom shall be residents of Cook county and the owners in fee of real estate in Chicago bounded by the Chicago river on the north and west, by Lake Michigan on the east and by Peck court on the south, and who shall be disinterested and not related to the parties in interest by consanguinity or affinity; one each to be selected by the parties in interest and the two so chosen to select the third appraiser. It is also provided that "it shall not be incumbent upon any appraisers selected under the provisions of this lease to give any notice of the time and place of holding their meetings or to hear any evidence or arguments"; and further, "that the award in writing under oath of said appraisers, or a majority of them, of the then value of said demised premises, exclusive of the improvements thereon, shall be binding upon the parties to this lease and all parties claiming under them for the purposes hereinafter specified". All expenses of such appraisal, including reasonable compensation to the appraisers, to be borne equally by the parties.

The third contemporaneously executed contract provided *inter alia:*

"First. That the lessee shall construct and maintain during the term of the leases a driveway not less than fifteen feet in width along and upon the north side of lot eighteen, being the north lot of the two, and adjacent to the premises then owned by the lessor, which driveway was to extend from the west line of Michigan avenue to the west line of lot eighteen, and that the lessor and the occupants and owners of the premises, lying north and adjacent to lot eighteen, should,

during the entire existence of the term, have a right to use the driveway, without contributing to the cost or expense of maintaining the same, and that the right to use the driveway should not be granted by the lessees to any other persons than its own successors and assigns and persons occupying or claiming through or under it or them, except by the mutual consent of the parties;

"Second. That the east seventeen feet and six inches of the north fifteen feet of lot eighteen shall be at all times kept free and clear of all buildings, improvements and obstructions of every kind and nature above the driveway in question;

"Third. That the lessor shall have the right to build over so much of the west ninety-six and one-half feet of so much of said lots eighteen and nineteen as lies north of the north main wall proposed to be built upon the lots in question, as shown upon the plans prepared by Messrs. Adler & Sullivan, a copy of which is attached to the contract. The building to be constructed by the lessor under this clause of the contract was to be wholly above the fourth story of the building to be erected upon the lots by the lessee, as shown upon the plans above mentioned, and was to occupy a space ninety-six and one-half feet by about thirty-six feet;

"Fourth. That the plans and specifications attached to the contract defining the kind, character and dimensions of the building to be erected on lots eighteen and nineteen are made part of the contract, and the contract is to be construed, in regard to the improvements to be placed upon said lots, with reference to such plans and the measurements shown thereon, and these provided that the twenty-four feet west of the east fifty feet for the entire width of the lots, or fifty-two and sixty-seven hundredths feet, should not be built upon, but should be left open as a lateral court".

The foregoing quotation is from appellant's brief.

The provision is also found in this contract "that the rights of the parties hereto shall be in all respects the same as though the provisions herein contained had

266    APPELLATE COURTS OF ILLINOIS.

Chicago Auditorium Ass'n v. Fine Arts Building, 150 Ill. App. 262.

been incorporated into the ground leases hereinbefore mentioned''.

It is a fact that the lessor at the time of making the two leases and contract owned the building adjoining the demised premises on the north.

In May, 1906, appellee notified appellant that it had selected R. Hall McCormick as one of the appraisers to fix the rental value of the leased premises for ten years from August 1, 1906. Soon thereafter appellee selected Thomas M. Hoyne as another appraiser, and these two selected as the third appraiser Nathaniel C. Sears. These three appraisers set about making the appraisement. They fortified their own opinions with those of some well known and reputable real estate agents in Chicago. Open hearings were had, at which the interested parties, the litigants before the court, were represented by their ''experts'' and counsel. Hoyne did not agree with his co-appraisers, McCormick and Sears, and so reported in writing. McCormick and Sears agreeing made two reports under oath, one appraising the fair cash value of lot 18, exclusive of improvements, on August 1, 1906, at $213,360, and the other in like manner fixing the fair cash value of lot 19 at the sum of $208,000. Each appraisement was based on an appraised value of $8,000 per lineal foot. The experts' values ranged from 7,000 to $10,000 per lineal foot.

The appraisers rendered a joint bill for their services of $7,500. Appellee paid McCormick $2500 and $1250 to Sears, leaving appellant under the contract to pay the balance due Sears and the whole amount due Hoyne, which it does not appear it had done at the time of instituting this proceeding.

Appellant urges as grounds for reversal of the decree of the chancellor and its right to the relief sought and prayed for in its bill:

First: That the appraisers did not appraise the value of the demised premises, but erroneously appraised the value of the whole of lots 18 and 19, disre-

garding those parts claimed to be reserved for the use and occupancy of the lessor.

Second: That McCormick was not a fair and impartial appraiser, and that consequently the appraisement is void.

Third: That McCormick's receipt of compensation from appellee for his charges as appraiser, under the circumstances developed on the trial, nullifies his appraisal.

JUDAH, WILLARD, WOLF & REICHMANN, for appellant.

WILSON, MOORE & MCILVAINE, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

There is happily one point on which all parties are in accord, and that is that the three documents, under which the rights of all the parties must be admeasured, form in legal effect but one contract, which, in the solution of the matters in dispute, must be treated as a unit and read together. Indeed such is the very letter of the contract, which, in such circumstances, is also the spirit of the law.

A careful attention to the claims of the disputants, disclosed by the proofs, convinces us that the determination of what constitutes the demised premises under the contract governing the parties' rights, is limited in scope to the sole purpose of fixing the rental payment subsequent to August 1, 1906, and every ten years of the term thereafter.

We think it clear, both from the terms of the options and the covenants of the instruments comprising the contract of the parties, that the premises demised are lots 18 and 19, and that the restrictions as to use in no way detracted from the quantum of the land leased, which by construction for rental valuation became and constituted the demised premises. This holding does no violence to the canons of construction as laid down in any of the cases to which we have been cited,

268 · APPELLATE COURTS OF ILLINOIS.

Chicago Auditorium Ass'n v. Fine Arts Building, 150 Ill. App. 262.

or to other cases which an independent investigation has brought to our attention. We are inclined to view the cases of Springer v. Borden, 210 Ill. 518, affirming 112 Ill. App. 168, and Columbia Theatre v. Adsit, 211 Ill. 122, as being, in certain phases of the controversy, somewhat akin to the case at bar, and therefore supporting authority. By no clause or covenant, in either the options or the leases, is any part of the two lots, by direction or implication, excepted from the demise; together these two lots compose the premises demised. A strong circumstance corroborative of such conclusion is inferable from the fact that the rental payable for the first nineteen years of the grant was the same for each lot, and the further fact that appellant, by uncomplainingly paying for nineteen years all the taxes and municipal charges against both the lots, has impliedly at least admitted that it regarded these lots as composing the premises demised. That this is appellant's construction is deducible from such actions. It is upon the demised premises appellant covenanted to pay taxes and assessments, and upon the basis of the value of the same demised premises, to be ascertained by appraisement, it agreed to pay rent every ten years of the term subsequent to August 1, 1906. While the options cannot be resorted to for the purpose of, in any manner, changing or altering the terms of the final contract made in discharge of obligations thus incurred, yet for the purpose of affording a light by which the court may interpret the final contract, and in that way place itself in the attitude in which the parties stood to each other at the time of entering into the final contract, it may have recourse to the options. Rector v. Hartford Deposit Co., 190 Ill. 380; Stone v. Mulvaine, 217 Ill. 40. With such light we are impelled to the conclusion that for the purpose of fixing rental value it was not in the mind of either party that any portion of either lot shold be excluded, but that all the documents considered, including the options, show a concerted purpose on the part of the lessor and an understanding on the part of the lessee, that both lots

should constitute the premises demised, and upon the value of which, at the several times of appraisement, rent should be fixed and paid.

That the lessor intended, by its several contracts, terminating in the documents before us, to reserve to itself, and to exact from appellant, other terms and advantages besides the payment of a money rent, is patent and obvious from a reading of these several documents. The intent of the lessor is plainly discernible from the beginning, to which at all times appellant appears to have accorded its consent. This was the tenor of the Peck options, the terms of which have been embodied in the leases executed in fulfillment of such options. The situation of the lessor's adjoining building sufficiently accounts for such exactions. All parties were cognizant of the situation, as it existed at the time, and appellant voluntarily, by its writings under seal, solemnly took upon itself the grant of the privileges and advantages thus sought to be attached as conditions to the demise. A court of conscience must enforce the contract made and entered into by the parties in good faith, with full knowledge of its binding force, which the law imputes from the fact of entering into it, and will not relieve either party from the performance of any of its covenants because it may appear, forsooth, that the bargain made has turned out, in the lapse of time, to be hard or improvident. The two lots were properly appraised, as naked land, without any reference to any improvements thereon or their suitability as income producers. The question for the appraisers to solve was the cash value of the land divested of any buildings or improvements thereon and without the slightest regard to improvements.

The agreement executed simultaneously with the two leases recites that the lessor, the party of the first part, demised and leased to appellant lots 18 and 19, etc., "and in consideration of the premises and agreements herein contained" it is mutually agreed and covenanted, etc. Among other things appellant agrees

270     APPELLATE COURTS OF ILLINOIS.

Chicago Auditorium Ass'n v. Fine Arts Building, 150 Ill. App. 262.

to maintain a certain driveway for the joint use of the parties. Lessor grants the right to appellant to use certain portions of the south wall of lessor's building adjoining lot 18 on the north and appellant agrees to keep certain parts of lot 18 free and clear of buildings and obstructions and grants unto the lessor and its assigns the right to build, for its own use, above the fourth floor of certain parts of appellant's building, to be erected on lot 18, etc., additional stories in height not to exceed that of its own building north of lot 18, all of which are more particularly referred to in the statement preceding this opinion. So far as these covenants inure to the benefit of appellee, the assignee of the lessor, we do not regard them, or any of them, as being restrictive of the land demised, but that they are in law a grant by appellant of an easement to the lessor, and such rights of appellee therein arise in virtue of such easements granted by appellant to its lessor, and are enjoyed by appellee as rights and privileges in virtue of such grant to appellant's lessor. Durham & Sunderland Ry. v. Walder, 42 Eng. Com. Law, 987.

This is not a case of arbitration, but an appraisal of the value of the demised premises. The parties were not selected to settle any dispute as arbitrators, but to fix the value of the premises demised to appellant under the Studebaker leases. It follows that the cases cited as affecting arbitrations have no bearing on the appraisal in the case at bar. The three appraisers were appointed in accord with the terms of the leases. Each party participated and each appraiser seems to have been satisfactory to each party. No objection was made to either, and all the parties proceeded to the appraisal without any objection being interposed until after a majority of the appraisers made an appraisal and a return thereof, as provided in the leases. The objection, if valid, was made too late, and in any circumstances, for that reason, would be impotent to avoid the appraisement. But there is no irregularity here, in the appointment of the appraisers, and cer-

tainly nothing to which fraud can be imputed. Complaint is made about the appointment of R. Hall McCormick, and it is insisted that he was not an impartial appraiser. He certainly fulfilled all the qualifications made essential by the lease, and from that standpoint was impartial. It was not intended by the terms of the power of appointment that they should be disinterested as not being owners of contiguous property. The lease made it incumbent upon each appraiser to own in fee what is commonly designated as down town property. In other words, the parties wanted as appraisers persons who had knowledge of values of down town property based on ownership. While the law did not require the appraisers to hear evidence or arguments, still the leases expressly provided that the appraisal might be made by the appraisers without hearing evidence or argument. Notwithstanding this wide liberty of the appraisers to proceed and make the appraisal from their own knowledge or from information privately gathered, they proceeded with the utmost fairness and heard all the parties in open meeting and took evidence of expert witnesses, produced by each side, and heard the arguments of counsel for each disputant. The evidence of the various experts as to values per lineal foot ranged from $7,000 to $10,000. The appraisal as finally fixed by McCormick and Sears, a majority of the appraisers, was upon the basis of $8,000 per lineal foot, the exercise of a discretion favoring appellant. This effectually repels any inference of fraud or unfair dealing in the solution of the problem of value, which is in most cases fraught with difficulty. It is presumed, from the provisions as to appraisal, that the parties were content to rely upon the valuation of three persons, property owners within the limited district specified in the lease. By the value fixed by a majority of them, the interested parties are concluded. As said in Norton v. Gale, 95 Ill. 533, "So it is to be presumed the design was to select three who would need no evidence or argument, but be prepared at once to make a valu-

272    APPELLATE COURTS OF ILLINOIS.

Chicago Auditorium Ass'n v. Fine Arts Building, 150 Ill. App. 262.

ation.'' In Pearson v. Sanderson, 128 Ill. 88, in which the court held *in arguendo* that while notice and a hearing were necessary in cases of disputes submitted to arbitration, it said: ''But nothing of the kind is required in a case of this character. No evidence is to be heard. The appraisers ascertain such facts as may have a bearing on the value of the improvements in their own way, and act upon their own judgment.'' Stose v. Heissler, 120 *ibid.* 433.

That McCormick was part owner of the Victoria Hotel situate within 400 feet of appellant's leasehold, the land of which was to be appraised for a basis of fixing the amount of future rent, was one circumstance which qualified him to act as an appraiser. This fact may have made him favorable to high prices for Michigan avenue property; but even if that be conceded we hold, as the court did in Glover v. Rochester German Ins. Co., 11 Wash. 143, that the fact of partiality will not be sufficient to set aside an award, if the fact was known to the other party in time to revoke submission before the award was made. McCormick's interest in the Victoria Hotel property was known to appellant at the time he was accepted as an appraiser without objection. Mr. McCormick was justified in getting information as to the values in his own way, and privately applying to real estate agents and owners for information which might tend to influence or control his opinion and final judgment. Bradshaw v. Agricultural Ins. Co., 137 N. Y. 137; Story v. De Armond, 179 Ill. 510.

Finally, no complaint is made that the charge for services made by the three appraisers was improper or excessive. That appellee should pay McCormick, the appraiser of its choice, and half of the charge of the third appraiser, Sears, who had joined with McCormick in making the appraisal and fixing the value of the land, thereby discharging its obligation in that matter, as provided by the leases, is not occasion for remark, much less for criticism. It could hardly be expected that appellee would pay Hoyne in preference

to McCormick. It had no legal excuse to refrain from paying its share of the appraisers' fees, and to whom it chose to pay the same is a matter of indifference to appellant.

The conclusion of the chancellor is without error, and the decree of the Circuit Court is therefore affirmed.

*Affirmed.*