## ALLAN C. STORY

*v.*

## WILLIAM W. DEARMOND.

*Opinion filed April 17, 1899—Rehearing denied June 8, 1899.*

1. REFEREES—*when relations of referee to parties cannot be urged as a ground of objection to report.* Parties who agree upon a referee, each knowing his relations toward the other before and at the time of such agreement, cannot urge such previous relations as a ground of objection to his report.

2. SAME—*when referee may testify on hearing of exceptions to report.* Upon the hearing of exceptions to a referee's report the court may hear his oral testimony with reference to charges of prejudice and partiality presented by such exceptions.

3. SAME—*act on referees and act on arbitration are distinct.* The act entitled "Referees" (Rev. Stat. 1874, p. 847,) was not repealed by the act entitled "Arbitration and Award" (id. 149); nor are the acts to be construed *in pari materia,* as each act is in force and provides for a distinct and independent proceeding.

4. SAME—*parties may waive oath by referee.* One who is present when testimony is first heard by a referee, and who proceeds with the hearing without objection, cannot be heard to object that the referee was not sworn.

5. SAME—*when presumed that referee was sworn.* Where the law makes it the duty of a referee to be sworn, it will be presumed on appeal, if the contrary does not appear, that he was sworn.

6. SAME—*court may re-refer report of referee.* Under section 1 of the act entitled "Referees," (Rev. Stat. 1874, p. 847,) the court may re-refer to the referee his report previously filed, with directions to hear and pass upon objections to be filed by the parties, and to make such amendments of his report as he might deem, on full consideration, to be advisable.

7. SAME—*referee's findings of fact are entitled to weight given verdict of jury.* A referee, while performing the functions of a jury, is the judge of the credibility of the witnesses and the weight of the evidence, and his findings and conclusions of fact are entitled to the same consideration as the verdict of a jury.

8. APPEALS AND ERRORS—*Appellate Court's judgment final on facts in referee case.* The judgment of the Appellate Court, on appeal from the judgment of the trial court entered on a referee's report, is final as to questions of fact.

*Story* v. *DeArmond,* 77 Ill. App. 74, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

STORY, RUSSELL & STORY, (JOHN P. WILSON, of counsel,) for appellant.

W. W. DEARMOND, (JOHN P. AHRENS, of counsel,) for appellee.

Per CURIAM: This is an appeal from a judgment of the Appellate Court affirming the judgment of the superior court of Cook county. The following opinion of the Appellate Court was delivered by Mr. Presiding Justice ADAMS:

"This is an appeal from a judgment rendered in an action of assumpsit by appellee, against appellant, for clerkly services alleged to have been performed by the former for the latter. The declaration contains a special count averring a contract to pay appellee for his services $75 per month, and the common *quantum meruit* count. The appellant pleaded non-assumpsit only, and the court, by agreement of the parties, appointed George W. Westover sole referee, and the cause was referred to him. The referee made a very full and clear report of his findings, which is insufficiently abstracted, but which appellee's counsel has, to the great convenience of the court, set forth in his printed argument. The following brief synopsis of the referee's report is contained in the abstract: 'Plaintiff entered employment July 31, 1885, at a salary of $75 a month, and continued at that salary until discharged, November 16, 1894; that the plaintiff received the total sum of $5549.97, and is chargeable with $81.53 interest on certain money which he held belonging to one of defendant's clients, leaving balance of $2731, amount due, including interest to date of report, $3022.64, and

recommends judgment for said amount.' The court, on exceptions filed by appellant, disallowed the interest and entered judgment for $2731.

"Appellant filed twenty exceptions to the report, all of which, except exception 14 objecting to the allowance of interest, were overruled. Exception 10 is as follows: 'That the referee, at the time of the reference and hitherto, and the plaintiff, maintained confidential relations, and the plaintiff has been a clerk of said referee during the whole period of said reference, and the said referee has been and remained strongly prejudiced against defendant, which facts were wholly unknown to defendant at the time,' etc. Five affidavits were read by appellant in support of his exceptions, and Mr. Westover, the referee, was called and testified orally on behalf of the plaintiff in opposition to exception 10.

"The evidence *pro* and *con* is too lengthy to be recited, even in substance, in this opinion. We have carefully read and considered the affidavits read on behalf of the appellant, as they appear in the abstract, and also the testimony of the referee in the record, and are of opinion that the court ruled correctly in overruling exception 10, above quoted. The exception contains two charges: First, that at the time of the reference, and hitherto, the plaintiff maintained confidential relations with and has been a clerk of the referee during the whole period of the reference; second, that the referee has been and remained strongly prejudiced against appellant, which facts were wholly unknown to appellant at the time, etc.

"The appellant, in his affidavit, says: 'After the report was made deponent accidentally learned for the first time that plaintiff had been in Westover's employ and had attended to business for him during the entire year.' This is hearsay. Appellant does not state as of his own knowledge that appellee had been in the referee's employ,—he says he so learned. Westover, the referee, testified that he did not remember of appellee having ever

been in his employ; that he certainly had not been since his discharge by Mr. Story (which the evidence shows was November 16, 1894, more than six months before the suit was commenced); that he may have sometimes asked DeArmond, when he was going to court for Story, to answer to some case on general call, or something of that kind, as a courtesy,—never anything more. Referred to in the affidavit of Mr. Story and attached thereto is a card, of which the following is a copy:

" '*To the Chicago Law Institute:*

" 'I hereby certify that W. W. DeArmond, Esq., the bearer, is an assistant in my office; that he is not practicing law except as employed by me; that he is a suitable person to have access to the rooms of the institute; that he is authorized, until further notice, to receipt for books in my name for my exclusive use, and that I will pay any fine or damages which may arise through him to the said institute.    GEORGE F. WESTOVER.

" 'I hereby agree to use the library for George F. Westover and myself exclusively, and in no case draw any of the books in the library except at the request and for the personal use of the said George F. Westover.    W. W. DEARMOND.

" 'CHICAGO, *January 13, 1896.*'

"This is printed, with the exception of the names, the word 'assistant,' the date 'January 13' and the figure '6,' showing that it is a form used by the law institute for the withdrawal of books by non-members of the institute on the certificate of members. Mr. Westover testifies, on cross-examination, that he probably signed such a card, (the original was not produced on the hearing,) but that he knew nothing of the contents of it and never did; that he recollected that DeArmond had some cases which he had turned over to him long before, and that after he had left the office he consulted with him about questions of law arising in the cases, and that very likely he signed the card in connection with these cases.

"While it is doubtless true that the signing of the card in question was not strictly in accordance with the rules of the law institute, we do not think the circumstance

sufficient to overcome Westover's sworn statement that appellee was never in his employ. The referee, in his testimony, denies that he was at all prejudiced against or entertained any ill-feeling toward appellant, and denies all knowledge of any estrangement between them. We cannot discover in the proceedings before the referee any evidence of unfairness, partiality or prejudice on his part. On the contrary, the proceedings seem to have been conducted, in so far as he was concerned, with the utmost fairness and impartiality. The evidence is that both appellant and appellee had long been acquainted with Mr. Westover; that before the reference each of them applied to him to procure, if possible, a settlement of the case; that they both expressed a willingness to leave the matter to him; that he declined to act as arbitrator between them, giving as a reason that an arbitrator's decision, if wrong, could not be corrected on review, but consented to act as referee, because on review, errors, if any, could be corrected. The parties had been in the same office with Mr. Westover for four or five years, the appellee during that time being appellant's clerk and the referee a *quasi* partner of Mr. Story under the firm name of Story, Westover & Story. Thus each of the parties had ample opportunity to know the relation which existed between the referee and the other, and with such knowledge, each doubtless having confidence in the ability and integrity of Mr. Westover, chose him as referee. But even though each so chose him from a less honorable motive, namely, because he supposed or hoped he would be more friendly to him, this would not change the aspect of the matter. Each having known the relations of the other to the referee before and at the time of consent to the reference, neither can now be heard to urge such previous relation as a ground of objection to the report.

"In *VanBlaricum* v. *People,* 16 Ill. 364, a juror who had formed and expressed an opinion was accepted on the panel without objection, and this was assigned as error,

but the court overruled the assignment, saying:   'If the parties chose to have their cause tried by a prejudiced juror it was not for the court to refuse them the right.' The same is true in the case of an arbitrator.   Morse, after stating matters which would disqualify an arbitrator, among them prejudice against one of the parties, says:   'But the parties may, if they choose, waive the objection which might exist on any of the preceding grounds.  They are at liberty to select a person interested or a person prejudiced; a relation or an enemy of either of them.   Judge Cushing said in *Strong* v. *Strong:* 'If, indeed, parties in controversy choose to waive the rights of impartial trial, and purposely and avowedly select as arbitrators persons having formed an opinion on the subject matter or known to have partialities for and against the respective parties, the court, without commending, will not set aside the award merely because of the character of the arbitrators.'  And Chief Justice Shaw said in *Fox* v. *Hazelton: 'Volenti non fit injuria.*  If parties are content to submit questions in controversy to those who are known to have formed and expressed opinions upon the subject matter, or who are known to have partialities or prejudices for or against the respective parties, an award made by such arbitrators is binding.'   As it often happens, each party selects some one in whose favorable opinion he reposes confidence, and it is trusted that the opposite prejudices will balance each other.   Awards made by such referees cannot be impeached.'  The rule is the same if a party, knowing of the alleged disqualification, proceeds with the hearing without objection and omits to object until after the report is made.

"While the affidavits charge prejudice generally, there is nothing in appellant's or any of the affidavits showing when the prejudice, if any, came to appellant's knowledge.

"Morse recognizes that there is a distinction between such a reference as the one under discussion and a submission to arbitration, and says:   'Indeed, the language

of the courts in rendering their adjudications has nearly always been so lax that the distinctions properly existing between the various descriptions of reference and submission have become hopelessly confused.' (Morse on Arbitration and Award, 49.) On a submission to arbitration under the statute the arbitrators are judges, and their award is final and the court cannot review it on its merits. It is beyond the province of the court to pass on the merits of the controversy. On the other hand, the province of a referee is substantially the same as that of a master in chancery. The reference to him is to report the evidence to the court, with his conclusions of law and fact, (Rev. Stat. chap. 117, sec. 1,) and his conclusions are not final, because the court, on exceptions being taken to the report, can hear and determine the entire controversy on the merits, and the judgment, when pronounced, is the judgment of the court and not of the referee.

"It is objected that permitting the referee to testify orally on the hearing of exceptions to his report was error. This question is not argued, appellant's counsel merely citing the following cases, none of which is in point: In *Ward* v. *Gould*, 5 Pick. 291, affidavits of the arbitrators giving a meaning to their report which the words used did not convey were read. The court held that it could not, for the purpose of construing the report, consider the affidavits. In *Newland* v. *Douglas*, 2 Johns. 62, the testimony of arbitrators was offered to prove a mistake in their award,—in other words, to impeach the award. The testimony was held inadmissible. In *Pulliam* v. *Pensoneau*, 33 Ill. 375, the court say: 'As a general rule, arbitrators will not be permitted to give evidence to impeach their award.' Counsel also cite *Shriver* v. *Ross*, 1 Brev. (S. C.) 293, and 2 Am. & Eng. Ency. of Law, 704, 705. We can find no such case reported in 1 Brevard. The foregoing are all the citations of cases in support of appellant's contention.

"In *Stone* v. *Atwood*, 28 Ill. 30, a bill was filed to have an award corrected on account of an alleged mistake, and testimony tending to prove the mistake having been introduced by the complainant, one of the arbitrators was called and testified on behalf of the defendant. This was assigned as error. The court say: 'Like a juror, he cannot be called to impeach his award, but like him he can be called to sustain it. That was the purpose and office of the testimony of the arbitrator called by Atwood.'

" 'In proceedings under a bill in equity seeking specific performance of an award concerning the dissolution of a partnership the arbitrators were permitted to testify concerning what matters were presented before them, and even whether or not they had decided all the matter referred.' Morse on Arbitration and Award, 361,—citing *Hawksworth* v. *Brammall*, 5 Ill. & Cr. 281.

"In *Robinson* v. *Shanks*, 118 Ind. 125, cited by appellant's counsel, a motion was made to set aside an award on the ground that one of the parties had, pending the arbitration, counseled and advised the arbitrators, induced one of them to go to his house, remain there all night and partake of his hospitality, and also induced two of them to go with him to the hotel and dine at his expense. Affidavits were filed in support of the motion, and on the hearing of the motion the court permitted the arbitrators to be examined as witnesses in open court. The referee was not examined with reference to the ground of his conclusions or as to any matter which had been before him as referee, but merely in reference to the charges of prejudice and partiality made against him by appellant, and we are of opinion that this testimony was properly admitted.

"It is objected that the referee was not sworn. As to whether he was or was not the record is silent. The proceeding by reference is strictly statutory, and the statute (chap. 117) does not require that the referee shall be

sworn. In support of this contention appellant relies on chapter 10 of the statute in relation to arbitrators, which requires that arbitrators shall be sworn. But the statute in relation to arbitrators does not, in any respect, govern the proceeding under chapter 117 in respect to referees.

"Counsel for appellant contend that either chapter 117, in force July 1, 1872, is repealed by chapter 10, in force July 1, 1873, or, if not, the statutes must be construed together as being *in pari materia*, and that, so construing them, the reference to a single referee was unauthorized, inasmuch as chapter 10 provides for a reference to three arbitrators. We think it sufficiently apparent from a mere inspection of the two statutes that they provide for distinct and independent proceedings, that there is no repugnancy between them, and that the proceedings under each statute must be considered solely with reference to the statute under which they purport to be. In *Morey* v. *Warrior Mower Co.* 90 Ill. 307, the court recognizes both statutes as being in force, as they undoubtedly are.

"Even if the law requires that the referee should be sworn, the omission to comply with such requirement would have to be considered waived by appellant. The record shows that he was present the first time appointed for taking testimony before the referee; that there was an adjournment till another time by his request, and that he authorized the referee to proceed in his absence if he should not appear at the time to which the adjournment was had; also, that appellant appeared by attorney, from time to time, before the referee and cross-examined and examined witnesses, in addition to which it does not appear when appellant first learned that the referee was not sworn, if such is the fact. (See *Pardridge* v. *Ryan*, 134 Ill. 247.) If the law requires the referee to be sworn, the presumption would be, in the absence of evidence to the contrary, that he was sworn, (*Garrity* v. *Hamburger Co.* 136 Ill. 499,) and there is no evidence in the record that he was not sworn.

"It appears from the record that February 2, 1897, the court, on the motion of appellant, referred back to the referee his report filed prior to that date, with directions to receive, hear and pass on such objections as might be presented to him by the parties, or either of them, within ten days from that date, and to make such corrections or amendments of his report as he might deem advisable. Appellant now objects to this order made on his own motion, and to the action of the referee, which was strictly in accordance with the order. To put the matter plainly, appellant requested the court that a certain thing should be done, the court acceded to his request and the thing was done, and now he complains of it having been done. It is clear that he cannot be heard to make such objection.

"Appellant contends that the referee's power was exhausted when he made his report, and the court was powerless to refer it back to him. By the very terms of section 1 of the statute the court has power to refer a cause back to the referee. Aside from the statute, we are of opinion that the power of the court to refer back was ample. 'The appointment of a referee in a common law controversy stands upon the same reason as the reference to a master of a similar controversy in chancery, and the proceedings founded on a similar necessity should be similar.' *Pardridge* v. *Ryan*, 35 Ill. App. 230.

"In *Cumberland* v. *North Yarmouth*, 4 Greenl. (Me.) 458, it was objected that the referee had no power to make a second report after re-commitment. The re-commitment was by order of the court. The court (Ibid. 464) overruled the objection, saying, among other things: 'Re-commitments of reports made under a rule of court or under a submission before a justice, in regard to which the common pleas has, by statute, the same power as it has over its own rules, have been uniformly made, both in this court and the common pleas, whenever, in the opinion of the court, the purposes of justice required such a course.' Cases having been cited in support of the position that

the referees having made their report their power was exhausted, the court distinguished between the cases cited and the case then at bar, saying: 'But all these were cases of submission to arbitrators out of court, in some of which they were expressly restricted as to time, and in others their power was held to be at an end after it had been once exercised.'

"Having thus disposed of the objections which, if sustained, would exclude consideration of the report, some, if not all, of which have perhaps received more attention than they deserve, we will next consider the objections which go to the proceedings before the referee and to his conclusions.

"It is objected that the finding of the referee that there was a contract between the parties for the payment by appellant to appellee of $75 per month as compensation for the latter's services is contrary to the evidence. This finding was based mainly on the testimony of appellee and Witherell and two documents introduced in evidence by the appellee, marked 'Exhibit B' and 'Exhibit C,' respectively.

"The referee found that appellee's employment by appellant commenced July 31, 1885, and terminated November 16, 1894, and no fault seems to have been found with this finding.

"April 1, 1886, one Bailey, William C. Witherell and appellant entered into a sort of partnership, by the terms of which the net profits of the business were to be divided between them in the proportion of three-fifths to appellant, one-fifth to Bailey and one-fifth to Witherell. The partnership was dissolved by the retirement of Bailey January 20, 1887. Appellant, Witherell and Bailey met together for the purpose of ascertaining the net earnings, etc., of the partnership up to the date of dissolution and the amount then due each partner. Appellee, being appellant's clerk, was present and assisted in the computations. 'Exhibit B' consists of six sheets or leaves, on

which are set down figures showing the gross earnings, the total expenses, including expenses paid and liabilities remaining unpaid; the profits; the share of the net profits of each partner; the state of the account of each partner, and the amount due him January 20, 1887. In the list of liabilities or expenses remaining unpaid, which list is in the handwriting of Mr. Bailey, is the following: 'DeArmond, $620.' The gross amount of earnings was first figured at $7761.57. The amount of liabilities unpaid, including the liability to DeArmond of $620, was set down by Mr. Bailey at $812.29. This was deducted from the gross earnings, $7761.57, leaving the balance $6949.28, and from this last amount was deducted the expenses which had been paid, $1660.05, leaving net profits to be divided $5257.23. The last three amounts are set down on page 2 of the exhibit in Mr. Story's handwriting, showing that he adopted the figures, and the partners, appellant, Witherell and Bailey, settled on the basis of the net income ascertained as above stated. Appellee, cross-examined by appellant in person with regard to 'Exhibit B,' was questioned, and answered as follows: 'Q. In whose handwriting are the figures not included in the red or blue lines? A. They are in Mr. Story's handwriting.' This evidence is not abstracted. Original 'Exhibit B' has been certified to us in conformity with a rule of the court, and we have examined it, and find that the figures on page 2 of the exhibit 'not included in the red or blue lines' are the figures finally agreed on and accepted as a basis of settlement, showing gross income, gross expense and net income. These figures are in six lines, and are alluded to in the printed argument of appellant's counsel as 'six words,' and are admitted to be in appellant's handwriting.

"From the date when the partnership commenced, April 1, 1886, to the date of its dissolution, January 20, 1887, was nine and two-thirds months. Appellee testified that during that time he received only $105. Add

to this $620, the admitted liability to him, and we have $725, which for nine and two-thirds months is at the rate of $75 per month.

"From January 1, 1887, until February, 1890, the appellant and Mr. Witherell continued in business under an arrangement by which the latter was to receive a proportion of the profits of the business. 'Exhibit B' is a statement of the account between them which was accepted by both as a basis of settlement. This statement contains certain items of credit in favor of Mr. Story, one of the items being, 'By due DeArmond, $1260.77,' and the referee finds from the evidence, as to the sums paid appellee during the three years from January 31, 1887, till February 1, 1890, that the amount of such sums, added to the $1260.77 remaining unpaid, showed appellee's compensation for the three years to have been in the aggregate (within some cents) equal to $75 per month.

"Appellant now objects to the introduction in evidence of 'Exhibits B' and 'C,' alleging that they were not competent evidence, and in addition that there are certain erasures on 'Exhibit B' which should have been explained. It may be observed that one would naturally expect to find erasures and figures crossed out on sheets used in figuring the condition of such a business as that of appellant and his partners, extending through nine months. Appellant personally cross-examined appellee before the referee in regard to both exhibits, and no objection was made to their introduction in evidence, nor was any explanation called for or any motion made to exclude them. It is very clearly shown by the report of the referee that there is no erasure on 'Exhibit B' which affects in any way the conclusion that the liability of $620 to appellee was deducted from the gross income of the partners, and that it was charged by appellant against Bailey and Witherell and acceded to by them. Appellee testified that Story agreed to pay him $75 per month. Appellant, however, denies that he so agreed. William

C. Witherell, formerly in business with appellant, was called as a witness by appellant, and testified on his direct examination: 'Mr. DeArmond has asked me and tried to have me recollect these things. I told Mr. DeArmond I had an impression he was getting $75 per month, but I don't know how I got it. I don't know how I heard it, but I thought he was getting $75 per month there, and that Mr. Story also got him a position in a night school, and he was to make from $12 to $15 a week there.' This witness also testified that at the time he left there was an item charged as due to Mr. DeArmond,—about $1200, so he thought; that Story charged him with a certain amount for salary due DeArmond, and he made no objection to it. This the witness testified from memory, thus corroborating 'Exhibit C,' in which the item is $1260.77.

"'Referees, while performing the functions of a jury, are the judges of the credibility of the witnesses and the weight of the evidence, and their findings and conclusions of fact are entitled to the same consideration the verdict of a jury receives.' (*Butler* v. *Randall*, 25 Ill. App. 586; *Butler* v. *Cornell*, 148 Ill. 276.), Such being the rule, the finding of the referee that appellant contracted with appellee to pay him $75 per month cannot be set aside unless manifestly contrary to the weight of the evidence. We cannot say that the finding, either as to the contract or the amount the appellee is entitled to recover, exclusive of interest, is against the weight of the evidence. It certainly is not manifestly so. Quite a number of witnesses testified that such services as the appellee performed for appellant were worth from $75 to $150 per month, and the referee, under the *quantum meruit* count, and without reference to the count on the contract, might well have found, from the evidence, that appellee was entitled to recover $75 per month.

"Other objections were urged, none of which we consider ground for reversal. * * * The judgment will be affirmed."

After a careful review and consideration of the record in this cause, and of the briefs and arguments of counsel, we have come to the same conclusion as the one arrived at by the Appellate Court, and are satisfied that the law of the case is correctly stated in the opinion of that court, and we adopt the same as the opinion of this court. The decision of that court upon questions of fact in cases of this character is conclusive. It was so decided in *Butler* v. *Cornell*, 148 Ill. 276, and we see in appellant's argument no sufficient reason for overruling that case or for a different conclusion in this.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*