(No. 18465.—Judgment affirmed.)
JOHN MALLINGER, Plaintiff in Error, *vs.* ANNA R. SHA-
PIRO, Defendant in Error.

*Opinion filed April 21, 1928.*

1. EQUITY—*finding of master is not binding upon chancellor
or reviewing court.* The report of a master in chancery, while
*prima facie* correct, is of an advisory nature, only, and all the facts
are open for consideration by the chancellor and a court of review.

2. MECHANICS' LIENS—*an architect's lien cannot be enforced in
equity where condition of contract is not fulfilled.* An architect
who files a cross-bill in a foreclosure proceeding to enforce a me-
chanic's lien filed by him for plans and specifications prepared for
a contemplated apartment building which was never built is not
entitled to a lien where the evidence shows that as a part of his
contract he was to secure a loan on the property and that his fail-
ure to do so resulted in the abandonment of the plans, and as the
proceeding is in equity the question whether he has an action at
law does not arise.

WRIT OF ERROR to the First Division of the Appellate
Court for the First District;—heard in that court on appeal
from the Circuit Court of Cook county; the Hon. IRA RY-
NER, Judge, presiding.

J. H. PERKINSON, A. S. & E. W. FROEHLICH, and
ALEXANDER H. MARSHALL, for plaintiff in error.

PERLMAN, GOODMAN & SCOLNIK, (AVERN B. SCOLNIK,
of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here by writ of *certiorari* to review the
judgment of the Appellate Court reversing the decree of
the circuit court of Cook county and remanding the cause,
with directions to dismiss the cross-bill.

The original proceeding herein was a bill to foreclose a
trust deed against defendant in error, owner of certain real

estate situated in the city of Chicago. Plaintiff in error, who is an architect, had been made a party defendant to the foreclosure bill by reason of a claim for a mechanic's lien which he had filed against the property. He filed a cross-bill seeking the enforcement of the lien by reason of services rendered as an architect in preparing plans and specifications for an apartment building contemplated by defendant in error but which was not built. Defendant in error answered the cross-bill, denying the contract as set up in the cross-bill and alleging an agreement whereby plaintiff in error agreed to make plans, specifications and superintend the erection of a 36-apartment building on the real estate involved and that he would procure a loan of sufficient amount to clear the land of encumbrances against it and construct the building; that in the event he could not secure a first mortgage to cover the amount he would negotiate a first and second mortgage sufficient to do so; that he was to be paid five per cent of the cost of the building out of the loans as the construction progressed; that he was to receive no commission unless he negotiated the loan and unless the building was constructed pursuant to the plans; that he did not fulfill his agreement and that the building project failed because of his failure to comply with the terms of his agreement; that she would not have attempted to build but for the promises of plaintiff in error that he could and would secure the necessary funds for her. Prior to the hearing on the cross-bill and answer thereto the foreclosure proceeding was settled and the cause proceeded on plaintiff in error's cross-bill for lien and the answer thereto. The cause was referred to a master in chancery, who found the issues in favor of plaintiff in error and recommended that he be decreed a mechanic's lien on the premises in the sum of $5075. The chancellor overruled exceptions to the master's report and entered a decree in accordance therewith. Upon appeal to the Appellate Court for the First District the decree was reversed and the cause

was remanded, with directions to dismiss plaintiff in error's cross-bill.

Two questions are involved in the case. The first is a question of fact as to the terms of the contract, and the second, the construction of section 1 of the Mechanic's Lien act.

As to the first question, plaintiff in error offered his testimony and certain receipts showing delivery of the plans and specifications. He testified that he is a legally licensed architect; that on September 1, 1923, defendant in error came to his office; that he had previously met her through the real estate firm of Biggs Bros.; that on or about September 1 he made an oral contract with her to furnish her with plans and specifications for and to superintend the erection of an apartment building at an agreed compensation of five per cent of the estimated cost of the building; that he completed the plans and specifications and delivered them to her on October 4, 1923; that the estimated cost of the building was $145,000; that after preparation of the plans he procured bids or proposals for the building but that no loan was secured; that he was entitled, under the rules of the Chicago Board of Architects, if the building was not constructed, to seven-tenths of the total fee, or seven-tenths of five per cent. He denied that he was to secure a loan for defendant in error.

Defendant in error testified that she first met plaintiff in error in May or June, 1923; that he called her on the telephone and told her that someone in Biggs' office informed him that she had purchased the lot and was going to erect a building on it and he would like to come and see her; that he came over and stayed two hours discussing the matter; that she told him that unless he could finance the building he could not start the plans, and he said that he could finance the building without trouble as he had done the Jex building for Charles J. Jex; that he had secured the loan for that building and would do the same for her; that she told

him she would look at the Jex building, and if that was satisfactory and he could finance the proposition she would send for him to act as her architect; that she saw him several times after that and talked about the cost of construction and opportunity for getting a loan and that she talked to loan firms about the building; that on one occasion he told her that her attempts to assist in getting the loan for the building were interfering and making it harder; that he was taking care of it and that she would spoil things and bungle them if she interfered; that she met him at the office of different loan companies to assist in securing the loan, and that she gave him references as to her financial responsibility to show to anyone interested in financing the building. Plaintiff in error admits that he made some effort to get in touch with persons or firms who might loan money on the property but denies that it was his duty under his contract to do so or that he had ever made any agreement to get a loan for defendant in error. He testified that he got references from her as to her financial responsibility for his own use in determining whether he should prepare the plans for her.

Leslie Williams testified that he is in the real estate business and at the time of the contract in question was employed by Biggs Bros.; that he saw plaintiff in error with reference to defendant in error's property and told him that he could have the job as architect if he could negotiate a loan sufficient to clear the land and build; that the witness was to have two per cent on his deal as commissions; that plaintiff in error agreed to this and said that he could get the loan as he had done for the Jex building, which appears to have been handled through Biggs Bros.

Frank P. Davis testified that he was the manager for Biggs Bros. and that he spoke to plaintiff in error concerning defendant in error's property; that Biggs Bros. were brokers for defendant in error; that he told plaintiff in error that if he could get a loan sufficient to raise the encum-

brance and build a building the same as he did on the Jex
building they could make a deal with him to prepare the
plans and specifications, and that plaintiff in error said he
would do so and that he was sure he could get the loan; that
he saw plaintiff in error some months later and asked him
about the commissions which the firm was to receive, and
that he replied: "I will certainly give you that two per cent
provided we get the loan, but we haven't got the loan yet;
until then we haven't got it coming."

Charles J. Jex testified that plaintiff in error made ar-
rangements for the loan and drew the plans for his building.

Plaintiff in error again took the stand and denied that he
had ever talked with Williams or Davis about a contract
with defendant in error; that he learned about her prop-
erty from Biggs and had no further talk with him or Wil-
liams or Davis after that; that their testimony was all
wrong. He admitted upon cross-examination that he had
met Jex through Williams; that the latter had introduced
them. This was all the testimony in the case.

Plaintiff in error urges that since the master and the
chancellor found the issues against defendant in error, a
court of review should give substantial weight to that fact
and not disturb such finding unless it is manifestly against
the weight of the testimony; that since the master saw
and heard the witnesses he was in a better position than
this court to judge as to their credibility. This is a misap-
prehension of the effect of a finding by a master in chan-
cery. Where witnesses are produced and examined in open
court the finding of the chancellor will not be disturbed
unless it is manifestly and clearly against the evidence, but
it does not follow, and it is not the rule, that the same
weight is to be given to the finding of a master in chan-
cery. In a chancery proceeding the facts are found by the
court as a basis of the decree. The master's report, while
*prima facie* correct, is of an advisory nature, only. All the
facts are open for consideration by the chancellor and a

court of review. The chancellor in such a case has no better opportunity to judge the credibility of witnesses than has a court of review. (*Chechik* v. *Koletsky,* 311 Ill. 433; *Corbly* v. *Corbly,* 280 id. 278.) It seems clear, upon an analysis of the testimony herein given, that plaintiff in error did not discharge the burden cast on him to prove his right to a lien by a preponderance of the evidence. He was not required to make a contract of that kind, but having made it his right to a lien must be contingent upon his discharging his contract. While it may be conceded that before it could be known whether a loan could be secured the major portion of his work must be done,—that is, the preparation of plans and specifications,—yet that is a matter in which he could protect himself. This is a bill in equity to enforce a statutory lien, and the question whether he has an action at law does not arise. It would be inequitable to permit him, after securing the privilege of furnishing the plans and specifications on a certain condition precedent, to secure a lien against defendant in error's property when he has failed to carry out such condition. His testimony stands alone. It is not only contradicted by defendant in error, but the testimony of at least two other witnesses tends strongly to corroborate her statement that the contract was conditioned on his securing the loan referred to. We are of the opinion, therefore, that the chancellor erred in not dismissing the cross-bill on the facts, and that the Appellate Court was right in its conclusion on that matter.

This being so, it does not become necessary to pass on the second question, which involves the construction of section 1 of the Mechanic's Lien law of this State as applied to cases of this character.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*