Stanley J. Gottschalk Construction Company, Appellant, v. Victor C. Carlson et al., Appellees.

Gen. No. 33,215.

**522**

Opinion filed June 26, 1929.

FREDERICK C. JONAS and J. J. COOKE, for appellant.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellees; VINCENT O'BRIEN, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

On October 11, 1927, the petitioner, Stanley J. Gottschalk Construction Company, filed its petition against the defendants, Victor C. Carlson et al., for a mechanic's lien upon certain property known as the Indian Wood Subdivision. The rights of the parties, as contended by petitioner, arose out of two contracts, one in writing and the other by parol. One, referred to as the sidewalk contract, was evidenced in writing, set forth in the petition, and the other resting in parol was called the paving contract. Issues were joined on the petition and there was a reference to a master to hear the proofs and report his conclusions of fact and law to the court. There was a full hearing before the master, before whom all parties to the cause presented their proofs. The master found both facts and law in favor of defendants and recommended that a decree be entered dismissing petitioner's petition for want of equity. Objections were filed by petitioner to the master's report, who on hearing overruled the same, they being afterwards filed before the chancellor as exceptions to the report, which exceptions, after a hearing thereon, were overruled and a decree entered approving and confirming the master's report dismissing the petition for want of equity, and a judgment entered against petitioner for all taxable costs. There was an intervening petition and other claims filed by

defendants, other than the Carlsons, all of whom were heard before the master and their several claims disposed of adversely to them in the master's report and in the final decree. Petitioner only brings the record here for our review, which will be confined to the contentions made by petitioner and the Carlson defendants as no one other than petitioner is complaining or making any objection before this court to the decree in this appeal.

The findings of the master material to the issues before us for review are that petitioner is not entitled to a mechanic's lien, as prayed, for the amount claimed for the reason that the work done and materials furnished were not done and furnished in a good, substantial, workmanlike manner, and were not in accordance with contracts, agreements, specifications or drawings, and that petitioner refused to and did not furnish a contractor's sworn statement, as required by statute, but that it abandoned and refused to go ahead with the work; that petitioner negligently damaged seventeen trees belonging to defendant Carlson growing on the premises and that bark on three of said trees was damaged and injured, as a result of which said trees have died; that the fair, usual, reasonable and customary value of said trees was the sum of $1,200; that the bark on the remaining fourteen of said trees was damaged, which damage, if not repaired, will result in the loss and death of said trees; that the fair, usual, reasonable and customary charge made at the time and place of the damage for the repairing thereof was in the sum of $600, and that defendants are entitled to off-set said sums against the said sums, if any, due petitioner; that the sidewalk laid by petitioner was not constructed in accordance with specifications, nor in a good and workmanlike manner, but was defectively constructed, pointing out specifically such defects, and that by reason thereof defendants will be compelled to remove the same. and that petitioner is

not entitled to recover of defendants the amount claimed by it .on account of the laying of said walks or any part thereof; that petitioner did not perform its contracts or either of them, and on September 20, 1926, wrongfully and without good cause suspended operations on said premises under said contracts and insisted that defendant Carlson pay petitioner the amount then claimed by it before. it would proceed with the work; that on September 10, 1926, Carlson paid on account of the amount claimed by petitioner $2,500, and that petitioner in consideration of said payment and for the purpose of procuring the same represented to Carlson that all workmen and materialmen had been paid in full to that date; that such representations were untrue and that on the 13th of September, 1926, defendant Carlson was informed that Matteson Lumber & Coal Company claimed $2,329.80; and thereupon defendant Carlson refused to make further payments to petitioner unless and until it furnished to him contractor's statements, and did on the 18th of September thereafter demand of said petitioner that such statement be furnished, which petitioner refused to do, but insisted that payment be made to it without said statement; that defendant Carlson insisted on said statement being given and refused to make payment direct to petitioner unless petitioner would furnish waivers of lien from existing subcontractors. Thereupon petitioner tendered to defendant Carlson its checks purporting to be payable to the said subcontractors and demanded that defendant Carlson take the checks and mail them to the subcontractors and in exchange pay to petitioner the full amount of its claim, which Carlson refused to do; that as a result of which petitioner on September 20, 1926, suspended operations, until such time as such payment should be made to it; that at no time on or prior to September 20, 1926, did petitioner ever tender or fur-

nish to defendant Carlson, or to anyone in his behalf, a contractor's statement; that on September 23, 1926, as of which time petitioner continued to fail to fur-nish the contractor's statement, defendant Carlson on account of such suspension of said work declared the contracts breached and notified petitioner to do no further work, but to remove its equipment from the premises.

The master concludes, as a proposition of law, that defendant Carlson was entitled to such contractor's statement, as a condition precedent to making payment to petitioner so that he might be informed as to the identity of the subcontractors and the amounts un-paid to them, if any; and that upon being so informed he was entitled as a condition precedent to payment of the money direct to petitioner to insist that there be furnished waivers of liens from the subcontractors, whose money it requested be directly paid to the petitioner; that under the circumstances petitioner was not justified in suspending operations and that so doing constituted a breach of the contracts.

The master found that on the 20th and 23rd days of September, 1926, in addition to the claim of the Matteson Lumber & Coal Company of $2,329.80, there was due the following:

Chicago Gravel Co. for sand.................$  207.96
Brownell Improvement Co. for stone........  1158.39
Advance Oil Co. for gas and oil............   411.56
Chicago Riverdale Lumber Co. for lumber....    80.58
Fransen Bros., for hauling.................   137.63
Philip Carey Co. for expansion joints........   281.31
Kalman Steel Co. for reinforced steel........   580.57
Making a total sum due and unpaid of......$5187.80

The master further reported that the balance claimed to be due by petitioner could not be recovered in the mechanic's lien proceeding, and that its lien prayed

should be denied and the bill dismissed for want of equity upon a hearing, "in so far as this lien proceeding is concerned and that petitioner's remedy, if any he has, should be at law for suit to be recovered upon a *quantum meruit.*"

The outstanding contentions of the parties relate to the weight of the evidence, petitioner contending that the master's report and the decree of the court are contrary to the greater weight of the evidence, and the defendants, on the other hand, contending that the master's report and decree of the court are sustained by a clear, preponderating force of the evidence. The ultimate question therefore is, is the believable testimony found in the record sufficient to support the decree and the master's findings upon which it is based? The preliminary, and in a large measure the controlling, question is, was the petitioner justified in abandoning its contracts? In determining this, as well as other questions of fact, which arise upon the record, the province of the master was to determine from the testimony before him the weight and credit to be given the testimony of the several witnesses. These witnesses the master had the opportunity of seeing and of observing their manner and demeanor when testifying, their fairness or lack of fairness as such may have been made apparent by their manner, their interest or lack of interest in the matters about which they testified, and therefrom to judge both of the credibility of the witnesses and the weight to be accorded their testimony. The opportunity of seeing the witnesses is denied this court and therefore where the credibility of the witness is challenged we have not that opportunity which the master had, and necessarily we must in a large measure depend upon the conclusions upon which the master came, and ordinarily it would not be our function to disagree with the conclusions at which the master arrived, unless it is fairly apparent from a weighing of all the testimony that the master came to

his conclusions of fact against the preponderating force of the credible testimony.

In the first place when Carlson demanded of Gottschalk the contractor's sworn statement, in accordance with the statute, of the claims of subcontractors and others as a condition precedent to making the payments demanded by petitioner, he was clearly within his legal rights, and there is no evidence in this record by anybody to the effect that petitioner furnished such sworn statement. We think from the testimony of Gottschalk he endeavored to shirk his duty in this regard in not furnishing the sworn statements demanded. On September 10, 1926, petitioner was paid $2,500. Shortly thereafter petitioner knew that the Matteson Lumber & Coal Company filed a lien for the amount which they claimed to be due them from petitioner. To the demand for a sworn statement Gottschalk testified he told Carlson that he would not furnish waivers of lien, but that he had checks and envelopes ready to be mailed to the various subcontractors, if he, Carlson, would give Gottschalk a check for the balance of the estimate due petitioner, which Carlson refused to do. Gottschalk then testified that Carlson said "Well, if you pay the Matteson Lumber & Coal Company, I will give you a check," to which Gottschalk replied, "Why not give me the check now, then I know that everything is all right." Carlson said, "No, maybe your check is no good." Gottschalk testified that he finally said, "Well, Mr. Carlson, you know the estimate is way past due and by me showing my good will by giving you the checks to mail, I felt I was justified in asking for the check." From that testimony of Gottschalk it clearly appears that he refused to accord Carlson the statutory demand for a sworn statement. Gottschalk insisted that his way was sufficient. When Gottschalk produced the checks for the amounts admitted due to subcontractors, Gottschalk said, "Here, take these and mail them and give

me your check." Carlson replied, "I have been in business too long to accept anything like that." At that interview Gottschalk contended that the contractor's statement called for was not necessary, Gottschalk saying, "Here are the checks for the material people. Take them and mail them, and give me your check." Petitioner never tendered a contractor's statement at any time. Carlson had a perfect right to call for a sworn statement, and it was the duty of petitioner, under the statute, to furnish it. Carlson was justified in assuming from Gottschalk's attitude that the offer of checks, not certified, payable to admitted unpaid subcontractors, was but a subterfuge on Gottschalk's part to get money from Carlson on the pretense that such checks might be paid. Under the circumstances Carlson was well within his rights in refusing to comply with the unlawful demand of petitioner (made through Gottschalk), and Carlson had a right to rely for his own protection on compliance with the statutory provision regarding contractor's sworn statements of amounts due and payable to subcontractors.

The testimony of both Gottschalk and Carlson indubitably proved that a demand for the contractor's sworn statement was made by Carlson and that Gottschalk, acting for petitioner, unequivocally refused to furnish the same, and that none was ever furnished.

The believable evidence found in the record fully supports every finding of the master and is sufficient to support the decree dismissing the petition. As between the evidence of Gottschalk and Carlson, the master was fully justified in weighing the evidence to give credence to that of Carlson as against that of Gottschalk. Carlson's evidence is straightforward and to the point. Gottschalk was evasive and showed an intention not to accord Carlson the statutory right to a sworn statement. Furthermore the environing circumstances corroborated the testimony of Carlson and discredited that of Gottschalk. Gottschalk set up

his own way as being sufficient and all that he would accord Carlson, and thus ignored Carlson's statutory right to a sworn statement of petitioner, and in an attempt to enforce his own way against Carlson, breached the contract, by abandoning the work. Two statements were proffered by petitioner on September 28, 1926, and October 15, 1926, after petitioner had breached the contract and after it had abandoned the work under the contract, and after it had been terminated by an appropriate notice from defendant.

The evidence supports the finding of the master that the work done was done in an unworkmanlike manner and that the trees upon the property were damaged in the manner found by the master. The contract provided for the installation of a complete system of sidewalks, the work upon which was to be done not only in a workmanlike manner but to the satisfaction of the owner. Petitioner did not satisfy either of these provisions of the contract. There was no substantial performance of the contract by petitioner, for when the work was only partially done petitioner abandoned the further prosecution of the work. However, if petitioner is entitled to compensation for the actual work done, the decree does not preclude an action at law on a *quantum meruit,* but such an action would not lie on the theory of substantial compliance with the contract.

The decree is in accord with the law. Petitioner's contract was to construct a system of sidewalks and pavement. He did not do so, but before completion abandoned the work and refused to continue. The contract is the basis of the lien and to maintain a mechanic's lien suit, petitioner must show either performance or excuse for nonperformance, which must result from the owner's breach of the contract.

In *Kinney v. Sherman,* 28 Ill. 520, it is said:

"The statute gives the petitioner security by lien, if he goes on and completes the contract, and to avail

of it, he must complete it, unless prevented by the other party. Having shown then, that he neither completed the contract nor was prevented by the defendants from so doing, he is not in a position to claim the benefit of the statute.''

In *Klaub v. Vokoun,* 169 Ill. App. 434, this court reversed the decree allowing a lien and remanded the cause with directions to dismiss the bill, it appearing that the contractor, who had undertaken to make all plumbing connections from sewer to roof, had omitted a connection from the boiler to the kitchen stove, the cost of which was $37.50, and refused to supply the omission, notwithstanding all the other work had been done, and the court observed ''if he were right in this position he was entitled to a mechanic's lien. If the connections were included in the contract, the appellee, failing and refusing to put them in without fault on the part of appellants, was not entitled to a lien.''

Before the enactment of section 4, ch. 82, Rev. St., Cahill's St. ch. 82, ¶ 4, the Mechanics' Liens Act now in force, there was decided *Geary v. Bangs,* 33 Ill. App. 582, in which the court said:

''In order to obtain a lien the contractor must show that he has performed his contract, or that he has been prevented from so doing by the act of the other party. Defendant showed by his petition, as well as by the evidence introduced at the hearing, that he had abandoned his contract and refused to complete, and he has not shown what amounts in law to an act of prevention by the other party to it.''

Section 4, *supra,* in effect, modifies this decision by permitting abandonment where the owner wrongfully withholds payments of money justly due. *Abhau v. Grassie,* 262 Ill. 636, does not apply to the facts of this case, because in that case the work was stopped by agreement, and therefore section 4 did not apply, as the abandonment there was not within the meaning

of the act. Petitioner relied upon section 4 under the contention that the work was abandoned rightfully because Carlson wrongfully withheld payment of moneys justly due. The master found contrary to this contention, and we agree with that conclusion that payment of moneys was not wrongfully withheld from petitioner, and that it therefore was not justified in breaching the contract by abandoning the work. Section 5, ch. 82, *supra,* puts the burden upon the owner to require, and of the contractor to give, sworn statements in the names of all parties furnishing all material and labor and the amounts due or to become due each, and in section 21 of the Act, Cahill's St. ch. 82, ¶ 21, it is provided that:

"In no case, except as hereinafter provided, shall the owner be compelled to pay a greater sum for or on account of the completion of . . . such improvement than the price or sum stipulated in said original contract . . . unless payment be made to the contractor . . . in violation of the rights and interests of the persons intended to be benefited by this Act."

And section 32, Cahill's St. ch. 82, ¶ 32, provides:

"No payments to the contractor or to his order of any money or other considerations due or to become due to the contractor shall be regarded as rightfully made, as against the subcontractor . . . if made by the owner without exercising and enforcing the rights and powers conferred upon him in section 5 . . ."

If Carlson had paid petitioner without requiring the statement provided for in section 5, subcontractors who had complied with the act on their part would, notwithstanding such payment, have a claim against Carlson and a right to a mechanic's lien. Such payment, if made, would have been at Carlson's risk. As held in *Liese v. Hentze,* 326 Ill. 633, the Mechanics' Liens Act is to be liberally construed as a remedial act but mechanics' liens exist only by virtue of the

statute creating them, and the statute must be strictly followed with reference to all requirements on which the right to a lien depends.

It was necessary for Carlson to protect himself against the claims of subcontractors and others to make a demand on petitioner for a sworn statement. Otherwise, he would not have been protected as against the claims of such subcontractors and others.

As said in *Gillespie v. Patrick*, 146 Ill. App. 290:

"The provisions of the law requiring the contractor's statement of payment to subcontractors, or a waiver of lien from them as a prerequisite to a demand for payment, are, it may be admitted, for the benefit of the owner as well as of the subcontractor, but the fact that such statements or waivers are not made will not forbid a lien where no demand is made by the owner for them, nor any claim even made that debts to subcontractors existed."

It is apparent that if Carlson wanted to protect himself against subcontractors and others, he must, as he did, demand a sworn statement of the claims of such subcontractors, materialmen and others.

The master has found, in which finding we concur, that a demand for the statement was made by Carlson and refused by Gottschalk, thereby justifying Carlson in withholding payment without compliance by petitioner with the demand for such statement; that in quitting the work petitioner breached its contract and thereby lost its right to relief by way of the enforcement of a mechanic's lien.

The controlling questions here are encompassed within those of fact as developed by the record. The duty of the court in determining the rights of the parties is to apply the law to the questions of fact, as found either by a jury, or a master or a judge. In the instant case, questions of law applicable to the facts are not in serious controversy, but the controlling questions of fact are somewhat strenuously in dispute.

While we have already in this opinion decided that the facts are as found by the master and decree of the court, we will review briefly the decisions controlling the weight to be given to the findings of fact by a master in chancery.

In *Story v. De Armond,* 179 Ill. 510, it was held that a referee, while performing the functions of the jury, is the judge of the credibility of the witness and the weight of the evidence, and his findings and conclusions of fact are entitled to the same consideration as the verdict of a jury. The Supreme Court in this case adopted the opinion of Mr. Presiding Justice Adams of this court.

In *Stanley v. Stanley,* 146 Ill. App. 109, the court said:

"The jury found that the issue as presented by appellant was not sustained by her and we see no good reason for disturbing the verdict of the jury and the finding of the chancellor. Where the evidence in a suit in chancery is conflicting and the witnesses have been examined orally in open court, the error in the finding of fact must be clear and palpable to authorize a reversal. *Ward v. Ward,* 103 Ill. 482; *Baker v. Rockabrand,* 118 Ill. 370."

We said in *Meyer v. Levy,* 249 Ill. App. 408:

"The record discloses that the master heard the testimony of all the witnesses, which the chancellor did not, and therefore the master was better able, than are we or the chancellor, to determine the credibility of the testimony of the several witnesses, and where such testimony was in dispute the master was better able to judge as to which witnesses were more worthy of credit and to give credit accordingly. The chancellor and this court have but the cold and unresponsive record upon which to come to a conclusion as to the credibility of the several witnesses, and a chancellor as well as a court of review should be slow in disturbing the conclusions of the master upon the

facts, unless it can be said that the master's conclusions were clearly contrary to the probative force of the evidence."

And in *Mallinger v. Shapiro,* 329 Ill. 629, the court said:

"In a chancery proceeding the facts are found by the court as a basis of the decree. The master's report, while *prima facie* correct, is of an advisory nature, only. All the facts are open for consideration by the chancellor and a court of review. The chancellor in such a case has no better opportunity to judge the credibility of witnesses than has a court of review. (*Chechik v. Koletsky,* 311 Ill. 433; *Corbly v. Corbly,* 280 id. 278.) It seems clear, upon an analysis of the testimony herein given, that plaintiff in error did not discharge the burden cast on him to prove his right to a lien by a preponderance of the evidence."

In *Wechsler v. Gidwitz,* 250 Ill. App. 136, we said:

"The master both heard and saw the witnesses, privileges denied the chancellor, and therefrom was the better enabled to judge of the credibility of the several witnesses than the chancellor or this court. The decision of the master under these circumstances would be disturbed with reluctance and not at all unless we are able to say that the master's findings of fact are manifestly contrary to the probative force of the proofs found in the record. This we are unable to do after a careful examination of all the proofs. The findings of the master on controverted questions of fact are entitled to the same consideration as accorded to the verdict of a jury. *Story v. De Armond,* 179 Ill. 510.

"In *Hickey v. Barrett,* 212 Ill. App. 86, this court promulgated such doctrine in the following words: 'The master . . . saw the witnesses and heard them testify and the finding of facts made by him is entitled to consideration. *Keuper v. Mette's Unknown Heirs,* 239 Ill. 586; *Glos v. Larson,* 138 Ill. App. 412.' And

in *Chicago Title & Trust Co. v. Central Trust Co. of Illinois,* 312 Ill. 396, it was written 'that the findings of fact by the master are conclusive in such a case unless a clear mistake or fraud is shown.'

"It is the opinion of this court that the master was right in his conclusions of fact and law, and in his recommendations to the chancellor as to the decree properly to be entered, and that the chancellor erred in disagreeing with and in not following the master's recommendations and in entering a decree contrary to the master's report."

It is patent from the foregoing review that the facts of any case, whether arising under the verdict of a jury, or the report of a master in chancery, are always subject in a court of review to determination as to the weight and probative force of the evidence. While the report of the master is not conclusive upon any fact unless it meets with the approval of the court of review before whom the record may be, yet such findings of fact will not be disturbed by a court of review unless such court, upon due examination of all such evidence, is able to say that the findings of the master, and the decree of the court founded thereon, are not supported by the greater weight of the evidence, or are contrary to its probative force.

In the instant case we concur with the findings of the master and the decree entered thereon by the chancellor, and therefore the decree of the circuit court dismissing the petition of petitioner for want of equity is affirmed.

*Affirmed.*

WILSON, P. J., and RYNER, J., concur.