(No. 11999.—Decree affirmed.)

ALEXANDER NEWMAN, Appellant, *vs.* SARAH A. WORK-
MAN *et al.* Appellees.

*Opinion filed June 20, 1918.*

1. DEEDS—*conveyance by parent to child is not, alone, evidence
of undue influence.* A conveyance by a parent to a child is not, of
itself, evidence of undue influence.

2. SAME—*delivery of a deed to third party, to be delivered to
grantee after grantor's death, is good.* The unconditional delivery
of a deed by the grantor to a third party, to be delivered to the
grantee after the grantor's death, is a good delivery.

3. SAME—*presumption of delivery in a voluntary settlement is
stronger than in case of bargain and sale.* The question of deliv-
ery is to a great degree a question of intention, and the presump-
tion of delivery in the case of a voluntary settlement by a deed
from a parent to a child is stronger than in an ordinary case of
bargain and sale.

4. TRUSTS—*parol evidence to establish a constructive trust must
be convincing.* Where it is sought to establish a constructive trust
and transfer the beneficial title to real estate by parol evidence the
evidence must be clear and convincing and must establish definitely
the terms of the trust.

APPEAL from the Circuit Court of Cass county; the
Hon. HARRY HIGBEE, Judge, presiding.

A. T. LUCAS, and J. J. NEIGER, for appellant.

CHARLES A. GRIDLEY, and THOMAS D. MASTERS, for
appellee Sarah A. Workman.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant and the appellee, Sarah A. Workman, are
the only children of Robert Newman, who died on Decem-
ber 13, 1916, having on November 30, 1916, signed and
acknowledged a deed conveying to his daughter, the appel-
lee, his farm in Cass county. This deed was filed in the
recorder's office of Cass county the day after his death,

and soon after the appellant filed his bill, which as afterward amended alleged, in substance, that the grantor was mentally incompetent to execute the deed; that its execution was procured by the solicitation and undue influence of the appellee and her children or relatives or some of them; that it was executed without consideration in the grantor's last illness and just before his death, not for the purpose of conveying the title in his lifetime but to take effect after his death as a testamentary disposition; that it was not delivered to the grantee or anyone for her; that at the time of its execution the appellee promised the grantor that if he would convey the land to her she would after his death convey one-half of it to the appellant in order to avoid the trouble and expense of any proceeding in court concerning the grantor's estate, and that by such promise she procured the execution of the deed. The bill prayed for a cancellation of the deed and a division of the land. The appellee answered the bill, denying all its allegations tending to show mental incompetency, undue influence, want of delivery, promise to convey to the appellant or testamentary intention. Issue was joined, the cause was heard on depositions and oral testimony, and a decree was rendered dismissing the bill for want of equity, from which the complainant appealed.

Robert Newman was eighty-three years old when he died. He was a widower, and previous to December, 1910, he was living alone on the farm in question. In that month he received an injury, having two ribs broken, and his grandson, George Workman, a son of the appellee, came from his home in Iowa and induced his grandfather, who was then seventy-seven years old, to give up farming and go back with him to Iowa, where Newman lived with his daughter, the appellee, in her home the remaining six years of his life. There is no evidence tending to show unsoundness of mind prior to November 29, 1916, the day before the execution of the deed. In the morning of that day he

fell to the floor, unconscious. Dr. Alcorn, who had been his physician before, was immediately called and found him suffering from contracted kidneys, nephritis or Bright's disease, (which are all names applied to the same disease for which Dr. Alcorn had treated him before,) and with valvular disease of the heart, the mitral valve being affected. Dr. Alcorn testified that Newman did not at this time carry on a connected conversation with him but answered some of his questions "yes" or "no," not answering others at all. His answers in response to the doctor's questions were intelligent, but he was not then competent, in Dr. Alcorn's judgment, to transact business. The doctor gave him a heart stimulant, the effect of which tended to quicken his mental processes, and in the evening the doctor found him much better, and he talked intelligently and rationally, understood why the doctor was there and answered questions intelligently. The doctor detected nothing wrong with his mind on November 30. He was capable of transacting ordinary business on that day and possibly the latter part of November 29. Dr. Alcorn continued his visits to Newman and was present when he died, on December 13, 1916. The cause of his death was nephritis, superinduced by valvular affection of the heart. Mrs. Ida Simpson was sent for by Mrs. Workman immediately upon her father's seizure, and Mrs. Simpson testified that he did not have sufficient mental strength to transact ordinary business, because he was too sick on that day. Several of Mrs. Workman's children were at her house on the next day, which was Thanksgiving day, and were present when the deed was executed. Five of them, besides Dr. Alcorn, testified to the maker's mental competency, and no one who saw him expressed an opinion that he was not on that day of sound mind. Samuel A. Stephens, who wrote the deed, was a bank cashier and the next door neighbor of Mrs. Workman. Newman sent for Stephens, and upon the latter's arrival gave him instructions for the preparation of a deed convey-

ing the land in Illinois to Mrs. Workman. When Stephens
asked for the description Newman sent for his trunk, in
which was a large number of papers, and gave Stephens the
tax receipts. There were present, besides Newman and
Stephens, Mrs. Workman, one of her sons and his wife,
two of her daughters and the husband of one of them. It
was mentioned that Newman had made a will and that he
was dissatisfied with it. In fact, he had made a will in
1913 dividing all his property equally between the appellant
and the appellee, which was admitted to probate in Wash-
ington county, Iowa, after his death. Stephens took the
tax receipts to the bank, prepared the deed and returned
to the house. Newman was lying down, but he was propped
up in bed and signed the deed, Stephens steadying his hand.
Mrs. Workman was not then present but was in the kitchen.
Newman spoiled his first attempt to sign the deed by start-
ing to write "Robert" a second time after writing it once,
and Stephens had him sign below the first signature and
erased the former. After the deed was signed Stephens cer-
tified to its acknowledgment before him as a notary pub-
lic, took the deed with him and retained possession of it
until Newman's death, when at Mrs. Workman's request he
mailed it to the recorder of Cass county. Newman told
him to keep the deed while Newman lived and turn it over
to Mrs. Workman after his death. Newman also then told
Stephens that Newman had made a will and was dissatisfied
with it, and asked Stephens to get the will from the bank
at Riverside and bring it to Newman to destroy. Stephens
got the will a week or ten days later and informed Newman
that he had it, but the latter told him to keep it a few days
and Newman would call for him to bring it, but Newman
died soon after, while the will was still in Stephens' pos-
session. Dr. Frank P. Norbury, a specialist in nervous and
mental diseases, who had never seen Newman, testified in
response to hypothetical questions that in his opinion New-
man was of unsound mind on November 30, 1916, that the

cause of his death was apoplexy, and that he was of unsound mind from November 29 until his death. The basis of this opinion was, of course, the view of the evidence taken by appellant's counsel, which was made the hypothesis of the question. This hypothesis was the most favorable construction of the evidence, in every particular, for the appellant's claim. In view of the proof of the condition of the grantor in the deed by all the witnesses present and testifying to the facts and circumstances attending its preparation and execution, the evidence did not justify a finding that the grantor was of unsound mind.

There was no evidence of undue influence. There was opportunity for such influence, but the evidence does not show any attempt to exercise it or any suggestion from anyone other than Newman himself as to what he should do. Several of the family were present when Stephens arrived and all seemed to understand what Newman intended to do. He had mentioned it to one or more of them and had asked that Stephens be sent for. There is no evidence that the purpose did not originate with himself or that any effort was made to impose upon his will the intent of any other person.

No fiduciary relation is shown to have existed between Robert Newman and his daughter. They lived together and he gave her $1300, which was invested in her home, but there is no evidence that either ever transacted any business for the other or reposed trust or confidence in the other in connection with any business. The father had very little business other than leasing his farm and collecting the rents. His grandson, George Workman, the appellee's son, assisted him in this, but there is no evidence that he ever suggested the conveyance to his mother. A conveyance by a parent to a child is not, of itself, evidence of undue influence. *Huffman* v. *Graves*, 245 Ill. 440.

The unconditional delivery of a deed by the grantor to a third party, to be delivered to the grantee after the grant-

or's death, is a good delivery. (*Baker* v. *Baker,* 159 Ill.
394; *Shea* v. *Murphy,* 164 id. 614; *Munro* v. *Bowles,* 187
id. 346; *Thompson* v. *Calhoun,* 216 id. 161; *Kelly* v. *Bapst,*
272 id. 237.) The question of delivery is to a great degree
a question of intention, (*Hoyt* v. *Northup,* 256 Ill. 604,)
and the presumption of delivery in the case of a voluntary
settlement, such as we have here, is stronger than in an
ordinary case of bargain and sale. (*Latimer* v. *Latimer,*
174 Ill. 418; *Kirkwood* v. *Smith,* 212 id. 395.) The deed
was delivered to Stephens to keep until the grantor's death
and then to deliver to Mrs. Workman. No condition was
attached to the delivery. It was effectual to pass the title
and was not testamentary.

It is contended on behalf of the appellant that the deed
was procured by the fraud of the appellee and was made
by her father for the purpose of enabling her to settle his
estate and divide the property between her and the appel-
lant without the necessity of any proceeding in court, and
that therefore she holds it as a trustee for herself and the
appellant. There is nothing in the facts proved, in connec-
tion with the execution of the deed, which tends to sustain
this contention, but it is based upon a conversation between
the appellant and the appellee in January, 1917, in Ains-
worth, Iowa, in which it was testified that the appellant said
to the appellee that he had come out to see whether she
was willing to settle with him or whether he would have
to go into court to get his rights; that she answered, "I
don't know what you have received from father and you
don't know what I have received, but we can get together
and each make a statement of what we have received and
we can pay the debts and divide the property," and that
she said her father made the deed to her so that she could
settle with the appellant without litigation; that her father
was fearful they would get into litigation and waste the
property. When it is sought to establish a constructive trust
and transfer the beneficial title to real estate by parol evi-

dence the evidence must be clear and convincing and must establish certainly and definitely the terms of the trust. This evidence does not show that the appellee procured the deed by fraud or that she promised to divide the property with the appellant. The fact that Robert Newman made the deed to the appellee so that she could settle with the appellant without litigation did not imply either that it was the grantor's intention that she should divide the land with the appellant or that she promised to do so.

The decree is affirmed.     ·    *Decree affirmed.*