---

(No. 15603.—Reversed and remanded.)
MAX CHECHIK, Appellee, *vs.* SARAH KOLETSKY, Appellant.

*Opinion filed February 19, 1924—Rehearing denied April 2, 1924.*

1. TRUSTS—*evidence to establish a resulting trust must be clear and convincing.* Where it is sought to establish a resulting or constructive trust and thereby transfer the beneficial title to real estate by parol evidence, the evidence must be clear and convincing and must establish certainly and definitely the terms of the trust.

2. SAME—*when resulting trust is not clearly established.* Where the testimony of the complainant seeking to establish a resulting trust is contradicted by the testimony of other witnesses and the circumstances in evidence support one story as well as the other, the evidence is not as clear, definite and unequivocal as is required to have the trust declared.

3. EQUITY—*master's report should not be given same effect as verdict.* The master's report should not be given the same effect as the verdict of the jury in a case where the parties have the right to have the issues of fact determined by a jury.

4. SAME—*master's report is advisory, only—review.* In a chancery case the facts are found by the court, and the master's report, while *prima facie* correct, is of an advisory nature, only, and all the facts are open for the consideration, in the first instance, of the trial court, and in case of an appeal, by the reviewing court.

5. SAME—*question for the Supreme Court is whether decree is proper.* Without regard to the finding of the master upon any particular question of fact, the ultimate and final question for the Supreme Court is whether the decree rendered by the chancellor is proper under the law and the evidence.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

WILLIAM FELDMAN, for appellant.

JOSEPH G. SHELDON, for appellee.

311—28

Mr. Justice Thompson delivered the opinion of the court:

July 3, 1920, Sarah Koletsky, appellant, entered into a written contract with Morris Wodiansky for the purchase of a flat-building in Chicago for the sum of $12,400. The contract recites the payment of $300 as earnest money, to be applied on the purchase when consummated. The purchaser agreed to assume a first mortgage, amounting to $7000, to execute a second mortgage for $2400 to secure a series of notes representing monthly payments of $75 each, and to pay $2700 in cash when the title was approved and the deed delivered. The contract provides for the payment of a broker's fee of $100 to Max Chechik, appellee. The sale was consummated July 27 and the deed was delivered to appellant. October 16, 1920, appellee filed a bill in the circuit court of Cook county setting forth the facts above stated and alleging that he was the purchaser of the property; that the contract was made in the name of appellant for his convenience; that he paid the $300 earnest money from his private funds; that the property was deeded to appellant without his knowledge and contrary to their understanding, and that appellant holds the property in trust for appellee. The bill concluded with a prayer that a resulting trust be declared in favor of appellee and that Sarah Koletsky and her husband be directed to convey the property to him upon the payment to her of the amount invested by her in the premises, and for general relief. The cause was referred to a master in chancery, who heard and reported the testimony and recommended a decree in accordance with the prayer of the bill. Exceptions were overruled, a decree entered granting the relief prayed, and this appeal followed.

Chechik testified that he is in the real estate business; that Sarah Koletsky is his wife's sister; that she had taken title for him to two other pieces of real estate; that she

conveyed these properties to him at his request; that he asked her to accommodate him again with respect to the piece of property in controversy and that she agreed to his proposition; that he told Wodiansky that he was the purchaser but that he wanted the property conveyed to Mrs. Koletsky; that Wodiansky agreed to this arrangement; that he drew the contract, which was signed by Mrs. Koletsky as the buyer and by Wodiansky and his wife as the sellers; that he gave Wodiansky his check for $300; that he took the contract and kept it in his possession; that Wodiansky gave him the abstract of title and that he had it brought down to date and had it examined; that there were some defects in the title, which Wodiansky agreed to clear; that about a week after the contract was made appellant came to his house and wanted him to let her have a half interest in the property; that he refused this request; that he told Wodiansky about her request and that Wodiansky told him the deed would be made to him in accordance with their understanding; that he did not know that the deed was made to Mrs. Koletsky until about two days after it was delivered to her; that he went to see her about the matter and she told him that she would convey to him a half interest in the property; that he refused to accept such conveyance and offered to pay her the amount of money she had invested but that she refused to accept it; that he has never received the $21 which he paid for securing the continuance to the abstract nor the $300 which he paid as earnest money; that his regular commission as real estate broker would have been $372; that he inserted in the contract the commission of $100 so that the property would cost him $100 less, and took the property in appellant's name so that it would be easier for him to sell it again.

Sarah Koletsky testified that she had taken title to two pieces of property for Chechik on former occasions but that she had never seen either of those properties; that she told

Chechik that she was in the market for a property and that he took her to see the property here in controversy; that he introduced her to Wodiansky and his wife and told them that she was a customer for the house; that she inquired the price and they told her it was $12,700; that she looked through several of the flats and offered $12,300 for the property; that they did not accept her offer then but told her to come back the next day; that the next day Chechik called for her and told her she had better decide about the property or someone else would buy it; that she asked him to wait until she got a check from her husband to give as a deposit for earnest money, and that he told her she did not need to bother about that because he would give a check for her; that they agreed upon a price of $12,400; that Chechik wanted $200 commission but finally agreed to accept $100; that the contract was executed; that about two weeks later she asked Chechik for the name of the lawyer who was examining the title, and that he then said to her that he was going to buy the property and she did not need to know the name of the lawyer; that that was the first time he had told her he was buying the property for himself; that she offered to return to him the $300 which he had advanced and that he refused to accept it; that she employed counsel and closed the deal in accordance with the contract.

Wodiansky testified that Sarah Koletsky entered into an agreement with him to purchase the property in controversy; that Chechik was the broker who handled the deal; that he agreed to receive $100 as his commission; that when Chechik brought appellant to his house he introduced her as a customer and after some conversation they agreed upon the terms of sale; that appellee did not say at that time that he was purchasing the property for himself, but that two weeks later appellee came to him and said he wanted the property deeded to himself; that appellant went through all the rooms of the flat in which he was living

and also went through at least two of the flats occupied by
his tenants; that the property contained six flats. Mrs. Wo-
diansky corroborated the statements made by her husband.

Max Projansky testified that he was in appellant's house
when appellee came for her to take her to see the property;
that she said to appellee she would have to call her husband
to get a check with which to make the first deposit; that
appellee told her it was not necessary, because he had his
check book with him and would loan her the money for the
first payment. Appellant's husband, who was made a joint
defendant with her, testified that Chechik told him he would
give appellant $100 if she would permit the property she
purchased to be conveyed to him. Chechik denied the state-
ments of these two witnesses.

Karl Seltzer, a real estate man, testified that Wodiansky
told him, shortly after the contract was executed, that he
had sold the property to Chechik, who had bought it in Mrs.
Koletsky's name, and that she now insisted that the prop-
erty be given to her. Harry Rossof, another real estate
man, testified to a similar conversation. Wodiansky de-
nied that he made the statement to either of these men.

When it is sought to establish a resulting or constructive
trust and thereby transfer the beneficial title to real estate
by parol evidence, the evidence must be clear and convinc-
ing and must establish certainly and definitely the terms of
the trust. In this case we have the unsupported testimony
of Chechik directly contradicted by the testimony of Mrs.
Koletsky and Mr. and Mrs. Wodiansky. They are the only
people who claim to know of their own knowledge anything
about what occurred at the time the contract of purchase
was executed. There are circumstances in the case which
make it difficult to arrive at any satisfactory conclusion,
but the circumstances supporting the story of appellee are
about equally balanced by the circumstances which support
the story of appellant. It is certain that the trust is not
established by evidence which is clear, definite and un-

equivocal in its character, and until it is so established a trust cannot be declared. (*Newman* v. *Workman,* 284 Ill. 77; *Ryder* v. *Ryder,* 244 id. 297; *Wright* v. *Raftree,* 181 id. 464.) Furthermore, if the claims of appellee had been sustained by the evidence it would not have established a. resulting trust.

Appellee contends that the master in chancery to whom the cause was referred has on the controverted questions of fact found in his favor, and that these findings should not be set aside unless they are clearly against the weight of the evidence. In support of this contention he cites *Union Colliery Co.* v. *Fishback,* 299 Ill. 165, *North Side Sash and Door Co.* v. *Hecht,* 295 id. 515, and *Siegel* v. *Andrews & Co.* 181 id. 350. In support of the proposition as stated in the last case cited, the court cites *Miltimore* v. *Ferry,* 171 Ill. 219, which states the rule thus: "Where the witnesses are produced and examined in open court, the finding of the court will not be disturbed unless the finding is manifestly and clearly against the evidence." This is a well established rule, but it does not support the proposition that such weight should be given to the finding of a master in chancery. The rule stated in the *Siegel case,* and repeated in the two following it, is not the law. It is not the rule that the master's report is to be given the same effect as the verdict of the jury in a case where the parties have the right to have the issues of fact determined by a jury. In a chancery case the facts are found by the court, and the master's report, while *prima facie* correct, is of an advisory nature, only. All the facts are open for the consideration, in the first instance, of the trial court, and in case of an appeal, by the reviewing court. Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, Was the decree rendered by the chancellor the proper one under the law and the evidence? *Corbly* v. *Corbly,* 280 Ill.

278; *Kelly* v. *Fahrney,* 242 id. 240; *Fairbury Agricultural Board* v. *Holly,* 169 id. 9.

After a full consideration of the testimony in the record we are convinced that the decree is not warranted by the evidence. It is therefore reversed and the cause is remanded to the circuit court of Cook county, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*