(No. 20790.—

EMMA LINK, Appellee, *vs.* ELIZABETH D. EMRICH *et al.* Appellants.

*Opinion filed October 23, 1931—Rehearing denied Dec. 8, 1931.*

CHARLES F. GLAESER, and JOSEPH G. SHELDON, for appellants.

OTTO A. JABUREK, and JAMES S. WIGHT, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal by appellants, Elizabeth D. Emrich and Frank J. Emrich, her husband, from a decree of the circuit court of Cook county ordering appellants to convey to appellee, Emma Link, all their right, title and interest in certain real estate in the city of Chicago, title to which was conveyed to appellee and appellant Elizabeth D. Emrich as joint tenants in 1916.

On May 4, 1928, appellee filed in the circuit court of Cook county a bill of complaint alleging that Elizabeth D. Emrich held title, as joint tenant with appellee, to a one-half interest in the real estate in question as trustee for the use and benefit of appellee. The prayer of the bill was that Mrs. Emrich and her husband, who was also made a party defendant to the bill, might be decreed to convey all their right, title and interest in the property to appellee. A demurrer to the bill was sustained, and appellee electing to stand by her bill prosecuted an appeal to this court, where

the decree was reversed (*Link* v. *Emrich,* 336 Ill. 337,) and the cause remanded to the circuit court, with directions to overrule the demurrer. On remandment of the cause appellants answered the bill, denying that the one-half interest was held in trust for appellee and setting up the Statute of Frauds as a defense. After the cause was at issue it was referred to a master in chancery to take and report the evidence with his conclusions of law and fact. By his report the master recommended a decree in accordance with the prayer of the bill. Objections to the report were overruled by the master and exceptions thereto were overruled by the chancellor, who entered a decree in accordance with the prayer of the bill. This appeal followed.

Appellee was married to Henry Eberhardt, who died on January 16, 1906. By him she had two children, Elizabeth D. Emrich and Henry Eberhardt, who survived their father and are yet living. On July 25, 1906, appellee married John Link, a widower, who had children by a former marriage. In March, 1916, appellee contracted to buy from Josephine Burmeister for $9000 the property in question, which is located at 3719 Maple Square avenue, in Chicago, and is improved with a three-flat building. She paid $6000 of the purchase price in cash, the balance of $3000 being secured by a mortgage on the premises. On March 17, 1916, the premises were conveyed to appellee and Mrs. Emrich as joint tenants, the deed having been thus drafted at appellee's request. The $6000 paid by appellee for this property was the proceeds of the sale of property which her first husband conveyed to her shortly before his death and was all of the money and property that she possessed at that time. She took possession of the property after the deed above mentioned had been made, collected all rents and paid all taxes and assessments against the property and for all repairs and improvements made thereon. Appellants lived in one of the flats in the building for a year and a half and paid rent to appellee. Link died on

October 5, 1924. In February, 1926, appellants moved into the flat in said building then occupied by appellee, and from that time down until the bill was filed they and appellee lived there together, appellants in place of rent paying all the expenses of the flat and providing board for appellee. On May 29, 1926, appellee paid $1000 of the indebtedness secured by mortgage on the premises and she and appellants executed a trust deed to secure the balance of $2000, which was evidenced by a new note signed by appellee and Mrs. Emrich. This note has not been paid. In January, 1928, appellee requested her daughter to convey her one-half interest in the property to her, and the daughter refused.

Josephine Burmeister, from whom the premises in question were bought, as a witness for appellee, testified that prior to the time the deed to the premises was executed appellee told witness that she thought she would have the deed made to her and her daughter since Link was her second husband and she wanted her children protected; that a few days later appellee said she had talked the matter over with Paul Kraemer, and that she wanted the deed made to her and her daughter in order to protect her children.

Appellee testified, in substance, as follows: After she had looked at the premises in question and about decided to buy the property she talked the matter over with her daughter, who objected to her buying it because her husband would have an interest in it. She went to see Paul Kraemer, a real estate dealer and a friend whom she trusted, and he advised her to have the deed made to her and her daughter as joint tenants. He explained to her what a joint tenancy was. She told Kraemer exactly what she wanted. She wanted the title fixed so that in case she should die before her husband he would take no interest in the property. Kraemer knew she had a son as well as a daughter. She wanted her son to have an interest in the property after her death. He was not in financial difficulties at the time the deed was made, "but he did, like all

men did, drink a little bit, but he was all right otherwise."
She understood that, the way the deed was made, if she
died first her daughter would take the property. In re-
sponse to a question as to why she did not have the deed
made to herself, her daughter and her son she said: "I
don't really know. At that time my daughter was the whole
thing—you know, my pet." After the deed had been made
Kraemer said, "Mrs. Link, I am sure your daughter will
return it back to you if Mr. Link should die before you,"
and the daughter said, "Sure; I only want to set my mother
safe." Kraemer died several years ago.

Elizabeth D. Emrich testified that she never at any time
promised to convey the property to her mother and denied
making the statement which her mother testified she made
to Kraemer after the deed was executed. She stated that
she heard her mother explain to Kraemer that the money
with which the property was bought came from her first
husband and that she wanted the title fixed so that if any-
thing happened the property would pass to her daughter;
that her mother then said, "You know she is the only one
that I really would want to have it, because you know our
Henry has made a lot of trouble." Kraemer then said,
"Yes, I know your Henry." In rebuttal appellee denied
having told Kraemer that she wanted her daughter to have
all of her property at her death, or that her son, Henry,
had so conducted himself that she "wanted to cut him out."

The position of appellee is that Elizabeth D. Emrich
took title to a one-half interest in the property subject to
a resulting trust in favor of appellee. Appellants contend
that the evidence is insufficient to show that there was or
is a resulting trust.

Ordinarily the existence of a resulting trust is estab-
lished by proof that one person has bought property and
paid for it with his funds and has had the title conveyed to
another. Where, however, a husband has bought property
and had the title transferred to his wife, or a parent has

bought property and had the title transferred to his or her child, a resulting trust is not shown to exist unless it is established that it was not intended that the wife or child should take a beneficial interest in the property, because under such circumstances there is a presumption that the property was transferred to the wife or child as a gift or advancement. (*Euans* v. *Curtis,* 190 Ill. 197; *Dodge* v. *Thomas,* 266 id. 76; *Hartley* v. *Hartley,* 279 id. 593; *O'Donnell* v. *O'Donnell,* 303 id. 31; *John* v. *John,* 322 id. 236.) This presumption is not conclusive but may be rebutted by proof, and whether or not a resulting trust arises in such case is purely a question of intention. (*John* v. *John, supra; O'Donnell* v. *O'Donnell, supra; Hartley* v. *Hartley, supra.*) A resulting trust arises, if at all, the instant the legal estate is taken and the title vests. (*Lord* v. *Reed,* 254 Ill. 350; *Dodge* v. *Thomas, supra.*) The burden of proof is upon the party seeking to establish a resulting trust, and the evidence, to be effective for that purpose, must be clear, unequivocal and unmistakable, and if it is doubtful or is capable of reasonable explanation upon any theory other than the existence of a trust it is not sufficient. *Wies* v. *O'Horow,* 337 Ill. 267; *Dodge* v. *Thomas, supra.*

The fact of the payment of the purchase price for the property in question by appellee is not disputed, and therefore the question in this case is whether or not appellee has proved that it was not intended that Elizabeth D. Emrich should take a beneficial interest in the property at the time the deed was executed. Appellee contends that the facts that the property constituted her entire estate and that she had another child that would be disinherited if there was no trust, together with the fact that she took and retained exclusive control of the property, collected the rents and paid the taxes and assessments and for all repairs and improvements of the property, show that it was not the intention of the parties that the daughter should have a

beneficial interest in the property. In support of this contention she cites *Pool* v. *Phillips,* 167 Ill. 432, *Dorman* v. *Dorman,* 187 id. 154, *Skahen* v. *Irving,* 206 id. 597, *Brennaman* v. *Schell,* 212 id. 356, and *Bachseits* v. *Leichtweis,* 256 id. 357. In the *Pool case* the conveyance was made to a wife at the instance of her husband. Both the husband and wife were advanced in years. The wife was childless, but the husband had six dependent children by a former wife and the property constituted his entire estate. After the conveyance to the wife she both by words and deeds recognized that the property belonged to the husband. In the *Dorman case* the conveyance was to a wife at the instance of her husband, and the wife, after the conveyance had been made, stated that the property had been deeded to her in trust and that she intended to deed it back to her husband. In the *Skahen case* the evidence showed that a husband and father put the title to property, which was his whole estate, in his wife and daughter for business reasons, and that he was of advanced age and penniless and had children other than the daughter, who had equal claims upon him. In the *Brennaman case* a woman who was separated from her husband bought property and reluctantly consented, on the persuasion of her son and daughter, to have the title placed in her daughter's name so that the property might be conveyed or mortgaged without her husband's signature. In the *Bachseits case* title to property purchased by the husband was put in the wife's name, and the wife thereafter stated that she did not have any interest in the property but that it belonged to her husband. In the *Pool case* and the *Dorman case* the court stated that the facts that the husband took possession of the property conveyed to his wife, improved it, paid the taxes thereon and occupied it with his wife as a homestead were not of themselves sufficient to overcome the presumption of a gift. In *Hartley* v. *Hartley, supra,* where the conveyance was to a son and the father paid the purchase price, the court said:

"Little importance in determining the intention of Mathias Hartley in causing the deeds to be made to his son Bert can be given to the fact that the father retained the right to the control of the farms during his lifetime and was to receive the rents and profits therefrom. If the father intended the deeds as grants of future interests and entered into a verbal agreement with the grantee by which he retained possession, control and use of the property during his lifetime, they would be valid grants of a future interest." It should be noted that in the instant case only a one-half interest in the property was conveyed to the daughter and that appellee took, and now has, the legal title to the other half interest, and there is no proof that appellee's son at the time of the conveyance of the property to appellee and her daughter was in anywise dependent on appellee.

The evidence tends to show that appellee believed it to be a definite and certain fact that her daughter would survive her, and that the chief reason why she had the property conveyed to herself and daughter as joint tenants was that she wanted her husband to have no interest in the property at her death if she died before he died. If it was intended that the daughter should take no beneficial interest in the property and that appellee should have the entire equitable estate then a resulting trust arose and she was in a position to compel a conveyance from her daughter at any time. If that is true, then the arrangement was not such a one as would have deprived appellee's husband of dower in the property had she died before her husband and also before her daughter died, because a surviving spouse is entitled to dower in real estate in which the deceased spouse had such an equitable estate at the time of his or her death that he or she could have enforced conveyance of the legal title to him or her. (*Kathman* v. *Sheehan*, 332 Ill. 280; *Tink* v. *Walker*, 148 id. 234; *Owen* v. *Robbins*, 19 id. 545.) It would seem, then, that to carry out the purpose she had in mind appellee must have intended

her daughter to take a beneficial interest in the property. In *Dodge* v. *Thomas, supra,* where a husband bought property and title was conveyed to his wife, it was contended that no gift to the wife was intended, and the evidence showed that the husband wanted the title so placed that his son by a former marriage would take no interest in the property at his death. The court said: "Manifestly, it was the intention of appellee in this case, judged by the testimony introduced by him on this point, that the wife should take the beneficial interest for herself and her children. If this be not true, then if he had died before his wife his son by the former marriage could claim that the beneficial title was in appellee and demand a partition of the same and insist that his interests as an heir of his father be set off to him, thus defeating the very purpose and intention of placing the property in the wife's name." The evidence for appellee is not inconsistent with the theory that she, at the time the deed was executed, intended her daughter to take a beneficial interest in the property to prevent her husband having dower should he survive her and that the daughter promised to convey her interest in the property to her should the husband die first. Under such an arrangement there would be no resulting trust and the Statute of Frauds would prevent the enforcement of the verbal promise. (*Euans* v. *Curtis, supra.*) We are of the opinion that the evidence in this case is not of that clear and strong character that is required to establish a resulting trust. *Chechik* v. *Koletsky,* 311 Ill. 433.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree dismissing the bill of complaint for want of equity.

*Reversed and remanded, with directions.*