Argus Press, Inc., Defendant in Error, v. J. C. K. Lindhout et al., Defendants. Sophie M. Lindhout and Francis A. Harper, Plaintiffs in Error.

Gen. No. 35,645.

Heard in the third division of this court for the first district at the February term, 1932. Opinion filed December 21, 1932. Rehearing denied January 3, 1933.

Francis A. Harper, for plaintiffs in error.

William L. Howard, for defendant in error.

Mr. Justice Hall delivered the opinion of the court.

By this writ of error it is sought to review a decree of the circuit court of Cook county by which it is ordered that J. C. K. Lindhout and Francis A. Harper, plaintiffs in error, turn over to the receiver of J. C. K. Lindhout certain notes and mortgages in order to satisfy a judgment of the complainant, Argus Press, Inc., against Lindhout.

On April 3, 1930, the Argus Press, Inc., complainant, filed a bill against defendant, J. C. K. Lindhout and others, in which it was recited that the complainant had on March 6, 1930, obtained a judgment against the defendant, J. C. K. Lindhout, for the sum of $1,650.26 and that execution had been issued thereon, and returned *nulla bona*. By the prayer of the bill, it was asked that J. C. K. Lindhout be restrained from disposing of certain property, and that the defendants discover and set forth to the court any properties of said Lindhout, which either of them might have in his

possession. The bill also prayed that a receiver be appointed for the property of J. C. K. Lindhout. The defendants, including J. C. K. Lindhout and Sophie M. Lindhout, his wife, were duly served with summons and filed sworn answers in the cause. The claim of defendants is that the notes, mortgages and certificates of stock ordered into the possession of the receiver are the property of Sophie M. Lindhout and that Francis A. Harper holds them as security for attorney's fees due him.

On April 28, 1930, the court ordered that defendant, J. C. K. Lindhout, appear before a master in chancery, Isidore Brown, "and be examined touching on his assets." On June 3, 1930, it was ordered that the cause be referred to Isidore Brown, master in chancery of the circuit court, "to hear evidence, to take proof and depositions, to cause to come before him all such witnesses as the respective parties may desire and examine them severally on oath and do each and everything necessary and incidental thereto, to have transcribed and reduced in writing the testimony and render in writing his conclusions and report both on the law and the evidence to this court." Thereafter on June 10, 1930, a report was filed by the master in which it is recited that on May 2, 7, 9, 10 and 22, 1930, various witnesses, including J. C. K. Lindhout, had appeared before the master and given their testimony, and that such testimony had been transcribed and that such transcript, together with certain documents produced on the hearings were attached to the report and were made a part of it.

The master found that on April 30, 1930, Whiteside & Wentworth, Inc., had been appointed receiver of Country Club Developers, Inc., in accordance with the prayer of the bill of complaint, and that on the 19th day of May, 1930, an order had been entered in this cause "directing the defendant, J. C. K. Lindhout, to assign, transfer and deliver to the said receiver all

such property, real and personal, things in action, equitable interest and other effects etc." Neither the order appointing the receiver, nor the order requiring Lindhout to turn over the property mentioned, appears in the record filed in this case. From the evidence heard, the master held that certain notes, trust deeds and stock certificates were the property of J. C. K. Lindhout and were either in the possession of J. C. K. Lindhout or someone for him, and concluded that J. C. K. Lindhout and Sophie Lindhout, his wife, be required by order of the court to turn such property over to Whiteside & Wentworth, Inc., receiver theretofore appointed in the cause.

Thereafter on June 12, 1930, the receiver filed a petition in this cause in which it is recited that on the 10th day of June, 1930, an order had been entered whereby defendants, J. C. K. Lindhout and his wife, had been directed to turn over to the receiver certain stock certificates, notes and mortgages; that a copy of this order had been delivered to Francis A. Harper, solicitor for the Lindhouts, who had certain of the documents in his possession, and a demand made on Harper for the delivery to the receiver of the property mentioned, and that the Lindhouts had failed to comply with the order, and that Harper had refused to do so, and that Harper made no claim against J. C. K. Lindhout. Petitioners prayed that J. C. K. Lindhout, Sophie M. Lindhout and Francis A. Harper be cited to show cause why they should not be committed for contempt of court.

On June 19, 1930, an answer to the petition of Whiteside & Wentworth, Inc., receiver, was filed by Harper, in which he alleged that he had been employed as attorney by defendant, Sophie M. Lindhout, to represent her in connection with certain real estate conveyed at the request of her husband to the Country Club Developers, Inc.; that Sophie M. Lindhout had turned over to Harper and to Frisch & Frisch certain of the notes and

mortgages described in the petition of the receiver, and that he, Harper, was holding such documents as security for the payment of his fees, and that J. C. K. Lindhout had no interest in them. Thereafter on June 30, 1930, the court ordered that the documents named be held by Harper, subject to the further order of the court.

On August 14, 1930, the master to whom the cause had theretofore been referred filed an additional report in which it is recited that since the preparation of his report in the cause on June 10, 1930, he had reopened the matter for further hearings, and that on July 15, 1930, J. C. K. Lindhout and Sophie M. Lindhout had appeared and testified, and the master further reported that after hearing such testimony he was of the opinion and found that the notes and mortgages set forth in the original report were the property of J. C. K. Lindhout, and recommended that a proper order be entered in the cause in accordance with the original finding of the master. Objections to the master's report were presented and overruled on March 28, 1931. The court after a full hearing ordered that the exceptions to the master's report be overruled, and in its decree found J. C. K. Lindhout to be the owner of the notes, mortgages and stock certificates described in the master's report; that Whiteside & Wentworth, Inc., receiver, had filed a voluntary petition in bankruptcy and had been adjudged bankrupt, and that such receiver had received no assets, performed no services, and ordered their discharge and removal, and further ordered that the Foreman Trust & Savings Bank be appointed receiver. The court in its decree further found that Francis A. Harper had possession of nine of the notes and mortgages described in the bill and ordered Harper to deliver them forthwith to the receiver named. It was further ordered that the bill be dismissed as to Shirley J. Cowing, George Cowing, Monee State Bank and Country Club Developers, Inc.

One of the principal grounds urged by plaintiff in error for the reversal of the decree herein is that under the terms of the order of reference made on April 28, 1930, directing that defendant, Lindhout, appear before the master "and be examined touching on his assets," the master exceeded the power conferred by the first order of reference in that various witnesses, on the question as to whether or not defendant, Lindhout, was the owner of the property described in the bill of complaint, were examined, when this order limited the examination to Lindhout, alone, "to be examined touching his assets." It is true that on various days subsequent to the entry of this order and before June 3, 1930, the receiver appointed by the court produced various witnesses who were examined at length on the question of the ownership of these properties. These witnesses were interrogated by the attorney for the receiver. At these hearings Lindhout appeared with his counsel, Francis A. Harper, and voluntarily testified. Thereafter on June 3, 1930, the court entered a further order of reference in which the master was given full power to examine witnesses produced by any and all parties to the controversy, and to report his conclusions of law and fact. An examination of the evidence contained in the certificate of evidence, and consisting of testimony produced by the receiver before the master, and made a part of the master's report, is to the effect that one Helen V. Clark, a clerk in a real estate office, held the title to certain real estate described therein; that at the behest and on behalf of J. C. K. Lindhout, she conveyed this real estate to Country Club Developers, Inc., and that there was delivered to J. C. K. Lindhout by the Country Club Developers, Inc., a series of notes aggregating $250,000 together with mortgages on two parcels of real estate, given to secure the payment of these notes; that as a further consideration for the

conveyance of this real estate to the Country Club Developers, Inc., certain stock certificates were issued by the Country Club Developers, Inc., to Helen V. Clark and by her surrendered and canceled and thereafter issued and delivered to J. C. K. Lindhout; that at the time of the hearing these certificates stood on the books of the corporation in the name of J. C. K. Lindhout; that after the delivery of the notes and trust deeds to J. C. K. Lindhout, he had obtained a personal loan and had hypothecated certain of the notes and trust deeds as security therefor, and that he had procured a further personal loan on certain other of the mortgages and notes given by the Country Club Developers, Inc., as a part of the purchase price of lands conveyed to it, and that Helen V. Clark had entered into an agreement with the persons from whom this loan was obtained, by which she subrogated her interest, if any, in the notes and mortgages hypothecated by Lindhout to secure the loan, to the interest of the bank; that 27,500 shares of the capital stock of the Country Club Developers, Inc., appear by the stock book to be the property of J. C. K. Lindhout, and that 17,660 shares had been recorded in the name of Helen V. Clark, now deceased. The evidence further shows that the 17,660 shares of stock in the corporation were transferred by Helen V. Clark to J. C. K. Lindhout, and that Helen V. Clark surrendered the certificates issued to her and that Lindhout is the owner of this stock. The evidence further is to the effect that Lindhout had always and under all circumstances claimed title to the real estate conveyed to Country Club Developers, Inc.

Among the witnesses produced by the receiver were the attorney who represented Lindhout in the matter of the transfer of his properties to Country Club Developers, Inc., and the representatives of the two banks who made the loans upon the notes and mort-

gages hereinbefore mentioned. Each of them testified that Lindhout claimed title to these properties. After the master's report had been filed, at the request of defendants, the master opened up the whole matter and permitted defendants to offer proof as to the ownership of these properties. Both Lindhout and his wife testified that the land conveyed to Country Club Developers, Inc., and the notes, mortgages and stock certificates given as the consideration for such conveyance were the property of Sophie M. Lindhout. Thereafter the master filed an additional report in which he recited ''that construing the testimony offered most favorably for defendant herein, the master saw no reason either in law or in fact why any of the findings and conclusions contained in the original report should be altered, changed or amended in any manner or form.''

While the hearings before the master may not have been as orderly as proceedings usually are before a court, still the record shows that defendants were given every opportunity by the master and the court to present their defense. The master heard and saw the witnesses, and his findings are justified by the evidence. In *Siegel v. A. H. Andrews & Co.,* 181 Ill. 350, the Supreme Court said:

''The first contention raises a question of fact, which has been passed upon adversely to appellants by the master. This finding has been approved by the chancellor, and, after a careful reading and consideration of the evidence, we cannot say that its weight is manifestly and clearly against the finding, and that being so, we should not and will not disturb it.''

We realize that the Supreme Court in *Chechik v. Koletsky,* 311 Ill. 433, and in *Hoelscher v. Hoelscher,* 322 Ill. 406, seem to have adopted a different rule and in the former case, to have held that ''the master's report, while *prima facie* correct is of an advisory na-

ture only. All the facts are open for the consideration, in the first instance, of the trial court, and in case of an appeal, by the reviewing court. Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, Was the decree rendered by the chancellor the proper one under the law and the evidence?''

The Supreme Court cannot have meant to say that a trial court or a reviewing court in considering a case similar to the instant one, cannot take into consideration the fact that the master had the witnesses before him, and that he had the opportunity of observing the manner and demeanor of the witnesses while testifying, their candor or lack of candor, and their interest, as in this case, in the outcome of the proceeding, in arriving at his conclusions. The contrary seems to be the view of the Supreme Court in its latest announcement on this question. In *Hogg v. Eckhardt*, 343 Ill. 246, page 257, in referring to the testimony of a witness heard before a master, the court said:

''The testimony of this witness has been subjected to a severe attack by counsel for appellee. The master heard the witness and had an opportunity to study him while he was on the witness stand.''

During the pendency of the proceeding, the bill was amended and Francis A. Harper was made an additional party. He was served with summons and filed an appearance in the case so that the court had complete jurisdiction of Francis A. Harper.

The court in its decree followed the master's reports, and we believe from a review of the record that the decree is just and should be affirmed.

*Affirmed.*

WILSON, P. J., and HEBEL, J., concur.